Lederhandler *v.* Bolotini, Appellant.

Argued November 17, 1960. Before Jones, C. J., Bell, Musmanno, Jones, Cohen, Bok and Eagen, JJ.

*Ralph S. Croskey,* for appellant.

*James R. Cavanaugh,* with him *Charles A. Lord,* and *Richter, Lord & Levy,* for appellee.

Opinion by Mr. Justice Musmanno, January 16, 1961:

Mrs. Yetta Lederhandler slipped on an apple strudel, fell and broke her hip. She and her husband sued Harry Bolotini, doing business as Bolotini's Catering Service, charging him with negligence in the manner he managed the dinner and reception where the accident occurred. The plaintiffs recovered a substantial verdict. The defendant moved for judgment n.o.v. and a new trial. The motions were refused, and from the judgment entered on the verdicts, the defendant appealed.

Reviewing the evidence in the most favorable light for the verdict winners, the following narrative emerges. On the evening of December 8, 1956, Yetta Lederhandler and her husband attended a dinner at the Overbrook Park Congregation Hall, 76th and Woodbine Avenue, Philadelphia, in honor of a Bar Mitzvah which had been celebrated that morning. The auditorium in which the dinner was served was laid with linoleum over a cement floor. At about 8 p.m., the guests, numbering some 200, sat down at tables accommodating from 4 to 12 persons each. For two hours the guests dined, the menu being ample and diversified enough to satisfy almost any appetite, namely, mixed fruit cocktail, olives, celery, nuts, mushrooms in patty shell, different kinds of fish, chopped liver, soup, roast turkey, cranberry sauce, a couple of vegetables, and hot apple strudel, topped off with baked alaska and demitasse. The food was carried to the tables by the waiters employed by the defendant catering firm.

At 10 p.m., the meal ended and some of the tables were moved to make room for dancing. During the dinner, fragments of food and trickles of beverage had spilled to the floor without any of the caterer's staff making any apparent effort to pick up or sweep away the liquids and articles underfoot.

Harry Schur, one of the guests, noticed on the floor "a spot of wetness and debris," and he warned one of the waiters: "You better clear this up before an accident happens or someone slips." Helen Winokur, another guest, testified that after the dinner the floor was "pretty sloppy." The plaintiff testified that she saw food, water, and "some vegetables on the floor."

At about 11 p.m., Mrs. Lederhandler noticed a "puddle of water" located about 3½ feet from the chair on which she was sitting next to her mother. By midnight this water had spread, and it was now touching the toes of her shoes. Seeking to avoid the mobile puddle, Mrs. Lederhandle thrust her feet under her chair, pushed backwards and stood up. As she did so, her feet came into contact with "something hard and slimy like," she slipped, fell heavily, and fractured bones which necessitated her being hospitalized and operated on.

One of the men who went to Mrs. Lederhandler's assistance after she fell observed a piece of mashed strudel at her feet. We are indebted to the learned trial judge in the court below for a definition of strudel. He describes it as a "delicacy made from pastry dough, apples and raisins." After it has fallen from a certain height to the floor, is stepped upon, and churned over, it ceases to be a delicacy and turns into a potential menace for pedestrians or sitters unaware of its presence. Mrs. Lederhandler did not know of this strayed strudel lurking under her chair.

The defendant argues in this appeal that he cannot be held liable for the rambling strudel because it cannot be linked to any of his waiters. He says in his brief: "To find as a fact that it [the strudel] got there as a result of defendant's negligence one must resort to the use of an inference viz., strudel was served at the dinner, hence one of the waiters must have dropped a piece."

But the plaintiff's case is not based on the claim that a waiter dropped strudel. Her point is that, regardless of how the strudel crept under her chair or how the chair canopied the strudel, the defendant was at fault in not seeing the strudel and taking it away.

The defendant had at least two hours in which to do this because if the dinner terminated at 10 p.m., and no strudel was served after that hour, the particular strudel which is the central figure of this case had to be on the floor no later than that same 10 o'clock. There is no proof or even suggestion that a diner or stranger placed the offending strudel under Mrs. Lederhandler's chair just before the invading pool caused Mrs. Lederhandler to retreat from her stabilized position overlooking the dance floor and the general festivities of the evening.

The negligence attributed to the defendant is not that one of his waiters dropped strudel, but that after this particular strudel fell from the table or through one's slippery fingers or off an unanchoring fork, the defendant did not clean up the resulting mess when the strudel splashed to and over the floor.

As caterer of the evening, the defendant had charge not only of the dinner but of the premises. Thus, while he was not insurer of the safety of his invitees, he had "the affirmative duty of maintaining his premises in a reasonably safe condition for the contemplated use thereof and for the purposes for which the invitation was extended, or to give warning of any failure to maintain them in that condition." (*Jerominski v. Fowler,* 372 Pa. 291, 295.)

The only real question in this case is whether the tortious strudel was on the floor a sufficient length of time to inform the caterer of its presence. As already indicated, since the dinner ended at 10 o'clock and the accident occurred at midnight, a period of two hours intervened during which a reasonable exercise of cau-

tion, care and a broom would have detected and expelled the threatening strudel.

The caterer, however, made no effort to clear the floor of strudel or any other one of the theretofore edible substances which had graced the table and now decorated the floor, impeding free and safe movement over it.

A caterer who serves meals and has charge of the premises in which they are consumed has the responsibility to clear the premises of food which he or his staff allows to escape to the damage of others; or, if it gets to the floor through the intervention of someone else, the caterer is liable for any resulting damage if it remains on the floor a sufficient period of time for him to be aware of its presence, actually or by constructive notice.

Was a two hour period enough time for the caterer or any of his staff to clear the linoleum of the vegetables, food, water and strudel which besmeared it? That was a question of fact for the jury. The jury decided the time to have been ample and, observing authoritative cases of this Court on the subject, we cannot say that the jury erred. We have held that the time of constructive notice depends on the particular circumstances of the case. In *Branch v. Phila. Trans. Co.*, 374 Pa. 60, 65, we said that "there could conceivably be a situation where 5 minutes would be adequate notice and where 5 hours would be inadequate notice."

In *Diakolios v. Sears, Roebuck*, 387 Pa. 184, 187, the plaintiff slipped on a banana peel when she attempted to avoid an accumulation of grease which had been on the floor for an hour. In affirming a verdict for the plaintiff, this Court said: "Nor can it be questioned that proof that the spot of grease was there for more than an hour was sufficient for the jury to find that defendant had or should have had knowledge of its existence."

We cannot say that the inspection required in a dining auditorium which is soon to be converted into a dance hall should be any less rigorous than that called for in the cases cited.

In the court below the defendant moved for judgment n.o.v. and a new trial, arguing that he was entitled to the latter on the basis that the verdict was against the weight of the evidence. In view of the fact that he did not introduce any evidence at all at the trial, his motion for a new trial on that basis would necessarily have to rest on a rather slippery foundation. His request for judgment n.o.v. has no more solid foundation.

Judgment affirmed.

Mr. Chief Justice JONES and Mr. Justice BELL dissent.