# Mather v. Pennsylvania State University

382

C.P. of Centre County, no. 338.

*Todd Berkey,* for plaintiff.
*James M. Horne,* for defendant.

KISTLER, *J.,* October 16, 2003—Presently before the court is the defendant's (Pennsylvania State University, d/b/a Nittany Lion Inn, a/k/a Penn State University, d/b/a Nittany Lion Inn) motion for summary judgment.

## FACTUAL BACKGROUND

(1) The defendant, Pennsylvania State University, operates and does business as the Nittany Lion Inn, a hotel and conference facility.

(2) On September 14, 1999, and at all times relevant thereto, defendant was the owner and operator of a certain real property and hotel and conference facility being the Nittany Lion Inn (defendant's premises).

(3) On September 14, 1999, Robert Mather, plaintiff, was lawfully on defendant's premises as a hotel guest and business invitee with the purpose of attending a conference at the facilities located on the defendant's premises. Just before the incident on the day in question, plaintiff was walking through the atrium area of the Nittany Lion Inn on his way to the outside courtyard. (Mather deposition, p. 23 ll. 1-9.) It had been raining for most of the day, but at that time the rain had stopped.

(4) As plaintiff reached out to push the bar on the door in order to open it, he slipped and fell on an accumulation of water, which existed on the floor. (Mather, p. 23 ll. 10-14.) As a result of his fall, plaintiff sustained injuries to his left shoulder, hip, and elbow. (*Id.,* p. 23 ll. 20-24.)

(5) The area in which plaintiff fell was wet, causing his pants and various papers that he was holding to become soaked with water. (*Id.,* p. 24 ll. 15-18.) As plaintiff sat on the ground, he became aware that water was dripping from the ceiling onto his head. (*Id.,* p. 21 ll. 1-4.)

(6) After plaintiff fell, inspection of the area, including partial removal of the ceiling tiles and roof covering, revealed that a leak in the relatively new roof was the cause of the water dripping onto the floor where plaintiff fell.

## PROCEDURAL BACKGROUND

(1) As a result of the injuries plaintiff sustained on defendant's premises on September 14, 1999, plaintiff and Janet Mather (plaintiff-wife) filed their complaint against defendant on August 22, 2001.

(2) Plaintiffs assert two counts of liability in their complaint against defendant. In Count I of the complaint, plaintiff avers that his injuries are the direct and proximate result of defendant's negligence and the dangerous and unreasonable condition that existed on their premises. (Complaint, ¶¶9a-f, 13a-f, 14a-e.)

(3) In Count II of the complaint, plaintiff-wife avers that, as a result of defendant's negligence, she has and

will be required to expend large sums of money on plaintiff's medical treatment, and has been deprived of the future society, services, assistance, companionship and consortium of plaintiff.

(4) Defendant filed its motion for summary judgment on July 10, 2003. As the court has received the briefs and heard the arguments of both parties, the matter is now ripe for disposition.

## CONCLUSIONS OF LAW

(1) Summary judgment shall be entered if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035(b).

(2) "The record must be viewed in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." *Marks v. Tasman,* 527 Pa. 132, 135, 589 A.2d 205, 206 (1991). Summary judgment may only be entered in cases where the right is free and clear from doubt. *Musser v. Vilsmeier Auction Co. Inc.,* 522 Pa. 367, 370, 562 A.2d 279, 280 (1989) (citing *Thompson Coal Co. v. Pike Coal Co.,* 488 Pa. 198, 412 A.2d 466 (1979)).

(3) Any doubt regarding the existence of a genuine issue of material fact must be resolved in favor of the non-moving party. *Marks,* 527 Pa. at 135, 589 A.2d at 206.

(4) The court's function in summary judgment proceedings is not to determine the facts, but only to determine if a genuine issue of material fact exists. *Liles v. Balmer,* 389 Pa. Super. 451, 567 A.2d 691 (1989).

(5) When the non-moving party bears the burden of proof of an issue at trial, it is incumbent upon that party to advance sufficient evidence in opposition to summary judgment "such that a jury could return a verdict in his favor." *Curran v. Philadelphia Newspapers Inc.,* 497 Pa. 163, 177, 439 A.2d 652, 658 (1981). Failure to adduce this evidence establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*

## DISCUSSION

Defendant contends it is entitled to summary judgment as a matter of law, because it avers that plaintiffs cannot meet their burden of proving defendant had actual or constructive notice of the alleged dangerous condition at issue, the water on the floor or the ceiling and/ or roof leak; and that they therefore cannot present a prima facie negligence claim at trial. (Defendant's brief in support of motion for summary judgment, p. 15.) Were it the court's duty to determine the facts, it may have found defendant's arguments to be persuasive. However, the court's duty is not to determine the facts, but to determine whether there is a genuine issue of material fact. Plaintiff has adduced evidence, which if viewed in the light most favorable to plaintiff, does indeed create a genuine issue of material fact as to whether the defendant had actual or constructive notice of the dangerous

condition of the leaking roof and the water on the floor. Thus, as defendant's right to summary judgment is not free and clear from doubt, this court is precluded from entering judgment in their favor.

Plaintiff's cause of action is governed by Restatement (Second) of Torts §343.[1] At issue is subsection (a), which states that, "A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, . . . he knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitee." *Zito v. Merit Outlet Stores,* 436 Pa. Super. 213, 216, 647 A.2d 573, 574 (1994) (quoting Restatement (Second) of Torts §343). Defendant does not dispute any duty owed to plaintiff as business invitee, or that plaintiff slipped and fell on water that was leaking from the ceiling onto the floor of their premises. Rather, defendant asserts that plaintiff cannot prove that defendant had actual or constructive knowledge of either the water on the floor or the leaky roof, and that the leak in the ceiling could not have been detected by reasonable inspection.

---

1. Restatement (Second) of Torts §343, Dangerous Conditions Known to or Discoverable by Possessor, states that a possessor of land is subject to liability for physical harm caused to his invitees by a condition of the land if, but only if he:

"(a) knows or by the existence of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitee, and

"(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

"(c) fails to exercise reasonable care to protect them against danger."

Defendant avers that the evidence adduced cannot support a reasonable inference that it had notice of water dripping from the ceiling above where plaintiff fell, as, they allege, there had never been any complaints of dripping water, there were never any prior incidents of patrons slipping, and plaintiff himself testified in his deposition that he did not actually observe any wetness on the floor before he fell. (Mather, p. 18.) The lack of previous incidents involving patrons slipping is not dispositive of whether defendant had notice that the roof was dripping on the date plaintiff slipped and fell on defendant's premises. Nor is the fact that plaintiff did not actually observe the water on the floor. Despite defendant's contentions, plaintiffs cite facts which, when cast in the light most favorable to plaintiff, tend to show that defendant did have actual notice of the water located on the floor where the plaintiff fell. Contrary to defendant's assertion that defendant lacked actual notice, plaintiff asserts that shortly after he fell an employee of the Nittany Lion Inn advised him that water had been reported on the floor. (*Id.,* p. 21.) It is quite possible to reach the conclusion that the water had been reported after plaintiff's fall, however, that conclusion would necessitate the court to determine the facts, and the court is not permitted to do so in this instance.

Furthermore, it is possible to infer from plaintiff's description regarding the appearance of the ceiling tiles at the time of his fall that defendant would have noticed a problem had they been making routine inspections as they purported to have done. Plaintiff stated that, at the time of his fall, water was dripping on his head which caused him to look up and take notice of the condition of

the ceiling. (Mather, p. 20.) Plaintiff noted that the "fibrous" tile above him was discolored, (*id.*), and explained during his deposition that he could tell that the ceiling was wet, because although the ceiling was white, it appeared "discolored, it was darker where it had gotten wet." (*Id.*)

Defendant asserts that it was the job of a regular employee to walk around the Inn every day and look for any maintenance or housekeeping issues, (Burket depo., 85-87), that the floor area where plaintiff slipped was cleaned every night, (*id.*, p. 82), that defendant's manager at the time walked around the premises daily to look for maintenance issues, (Niedle depo., p. 14), and that bi-weekly walk-throughs were performed for the express purpose of identifying any potential maintenance issues or problems, including items such as damaged ceiling tiles. (Burket, p. 54-55.) Defendants further assert that plaintiff cannot point to any evidence to establish that defendant's inspections were substandard, or that an inspection of a different nature would have revealed water on the floor, water dripping from the ceiling in the atrium area before plaintiff fell, or would have revealed some indicia that such problem was likely to develop. (Defendant's brief, p. 14.) If plaintiff's description of the appearance of the ceiling is taken as true, and had defendant been making the regular inspections it purports to have made, a jury could reasonably infer that defendant had actual notice of the problem with the ceiling on September 14, 1999, the day of plaintiff's accident.

Even if the court were to concede that plaintiff could not meet its burden that defendant had actual notice of

the water on the floor and the leak in the roof, it could not, with absolute certainty, reach that same conclusion with respect to the issue of constructive notice. As stated above, the defendant submits that plaintiffs cannot produce sufficient evidence to establish that defendant had constructive notice of the water on the floor or the leak in the ceiling.

What constitutes constructive notice varies according to the circumstances of each case. *Lanni v. Pennsylvania R.R. Co.,* 371 Pa. 106, 111, 88 A.2d 887, 889 (1952). Where proof of actual notice is lacking, courts have looked to the following factors as illuminative of whether constructive notice exists: "time elapsing between the origin and defect and the accident, . . . the size and physical condition of the premises, the nature of the business conducted thereon, the number of persons using the premises and the frequency of such use, the nature of the defect and its location on the premises, its probable cause and the opportunity which defendant, as a reasonably prudent person, had to remedy it." *Bremer v. W.W. Smith Inc.,* 126 Pa. Super. 408, 411-12, 191 A. 395, 397 (1937). In support of their position that plaintiffs cannot show constructive notice, defendant cites to several facts it deems relevant regarding the issue of constructive notice in this case.

In their brief, defendant cites to the proposition that, in each case, the evidence must be sufficient to demonstrate that the defect existed for a sufficient time for the defendant to have become aware of the defect of it with the exercise of reasonable diligence. *Angelelli v. Albert J. Mansmann Co.,* 168 Pa. Super. 275, 280, 77 A.2d 678,

680 (1951); *Parker v. McCrory Stores Corp.*, 376 Pa. 122, 124-25, 101 A.2d 377, 378 (1954). According to defendant, plaintiff has not come forward with any witnesses or other evidence to show the amount of water on the floor just after he fell, or to otherwise describe the appearance of the water on the floor in such a manner to suggest that defendant should have been aware of the problem or to create a reasonable inference that the water had been dripping on the floor any significant amount of time as to put defendant on constructive notice.

We disagree. Plaintiff, himself, is a witness and has testified during his deposition as to the amount of water on the floor just after he fell. Plaintiff testified that there was enough water on the floor to cause his pants and various papers he was holding to become soaked with water. (Mather, p. 24.) Plaintiff also described that because of how wet his pants, shoulder, and papers had been that the water on the floor must have been a puddle of, "at least a couple feet around or three feet maybe." In addition to plaintiff's own testimony, the deposition testimony of maintenance man Alan Niebel and director of lodging operations at the Nittany Lion Inn, James Burket, establish that there was at least one bucket of water placed on the floor to collect the dripping water from the roof at the exact location of the fall. (Niebel depo., p. 18; Burket, p. 60.) There was testimony that, on the day of plaintiff's accident, it had been raining for most of the day. (Mather, p. 25.) Given that fact, the fact that there was enough water on the floor to soak plaintiff's pants and papers, and the fact, as discussed earlier in this opinion, that the ceiling tile appeared discolored, the court determines that sufficient evidence exists to support a reasonable infer-

ence that dripping had occurred for such a length of time that a jury could conclude in the exercise of reasonable care on the part of the defendant, the water would have been discovered and reasonable preventative measures taken.

Defendant highlights the fact that no other witnesses saw water on the floor at any time before plaintiff fell, despite the fact that the atrium is a high traffic area and the fact that there were other patrons out in the courtyard just beyond the door where plaintiff was attempting to exit when he fell; and that no other conference attendees had commented to the defendant about problems with water on the floor during the several-day conference at the Inn. These are not uncontroverted conclusory facts regarding the issue of constructive notice. Plaintiff testified that the floor was a shiny, hard, slate floor. (Mather, p. 19.) Thus, it would be unlikely that the plaintiff or others would have detected water on the floor, which also presents a shiny, wet appearance. The fact that neither plaintiff nor other conference attendees were aware of the water on the floor does not obviate defendant's duty to make certain that the floor was free from water on a rainy day.

Plaintiff submits that if proper policies had been put in place to keep the floor in a safe condition during inclement weather conditions, plaintiff's fall may have been prevented. As plaintiff notes, James Burket, director of lodging operations, explained that they do not use rugs on the floor because they may pose tripping hazards. (Plaintiff's brief, p. 10, Burket, p. 85.) Plaintiff goes on to make the important point, that "though defendants did

have notice of the importance of inspecting the floors, walkways and restrooms, etc. there is no known proactive policy in effect to inspect the floors during inclement rainy weather, especially when defendants knew it had problems with the new section of the roof leaking." (Plaintiff's brief, p. 10.)

Also at issue as a dangerous condition in this motion for summary judgment is the leak present in the roof at the time of plaintiff's accident. Plaintiff submits that the leaky roof was a dangerous condition of which the defendant had constructive notice. The asserted basis for plaintiff's contention is twofold. First, plaintiff asserts that the area in which he fell was part of a general area of the ceiling which had been leaking from a defect in the new (1992) construction.[2] Plaintiffs contend that the presence of the inclement weather should have put defendants on notice that the rainwater could potentially be leaking through any problem areas in the roof. Second, plaintiffs assert that because of the prior leaks in the roofing of the new construction, defendant had a duty to make reasonable inspections of the new roofing.

In response, defendant avers that its employees specifically inspected the roof on at least an annual basis, and that routine maintenance was performed far more

---

2. The roof over the atrium where plaintiff fell was seven years old, and thus relatively new, having been constructed by an outside contractor as part of a renovation/expansion project completed in or about 1992. (Burket, pp. 17-18.) The 1992 renovation/expansion project involved several different areas, including (i) the atrium area where plaintiff fell and the flat one-story roof overhead; (ii) a bar with a different copper roof; and (iii) a library area with a three-story roof. (*Id.,* pp. 29-33 and exhibit 1 thereto.)

often than that. (Defendant's brief, p. 15; Burket, pp. 37-42; Niedle, pp. 32-37.) Furthermore, defendant cites to the measures necessary to determine the source of the leak for the proposition that the leak was a latent defect that reasonable inspection would not have revealed. In support of defendant's latent defect theory, it notes that even after plaintiff fell and water was observed to be dripping from the ceiling in the atrium, the source of the problem could not be found until the riverstone was removed from the roof top and the rubber seams pulled back in the area where the water had been dripping below. (*Id.,* p. 15; Niedle, pp. 17-24; Burket, pp. 57-58.) Thus, defendant avers, that undisputed testimony establishes that the tear in the roof seam could not have been observed by a visual inspection of the roof with no prior notice that a problem existed.

Plaintiff presents facts contrary to those cited by defendant. Plaintiff points out testimony by Mr. Burket that raises a question regarding the sufficiency of defendant's inspection policy. Mr. Burket testified that he was not aware of any proactive inspections performed on the roof where he would walk around and look for things that may or may not need to be repaired, including checking the roof for any potential problems. (Burket, p. 41.) Mr. Burket also testified that the Inn did not keep any maintenance records of in-house repairs done to the roof. (*Id.,* p. 46.) Plaintiff also notes that other than the yearly roof inspections, Burket did not describe any other inspections done on the roof. (*Id.,* p. 54.)

In an attempt to bolster the sufficiency of its inspection policies, defendant avers that because the roof was

only seven years old, and thus relatively new, that they would have had no reason to anticipate that there was a leak in the roof or to take special precautions in the absence of notice of the problem. Furthermore, defendant contends that evidence of prior leaks in the roof to establish a defect would not be admissible at trial because the leaks did not occur in substantially the same place and under the same or similar circumstances such that there is some relation to the leak in question.

However, the cases cited by defendant to support its contention differ factually from the case at bar. See *Stormer v. Alberts Construction Co.,* 401 Pa. 461, 466, 165 A.2d 87, 89 (1960) ("In the instant case the defendant knew of this dangerous condition of the highway on which it had piled the dirt, and adequately and amply protected it with lights which both plaintiff's and defendant's evidence proved were clearly visible for more than 250 feet."); see also, *Whitman v. Riddell,* 324 Pa. Super. 177, 182, 471 A.2d 521, 523 (1984) ("in the instant case, it appears that prior accidents at the same intersection were caused by various factors, none of which would have put appellant on notice that the traffic light in question was defective"). In this case, plaintiffs have pointed to facts which tend to show that the defect in the roof over the area where plaintiff fell was the same type of defect found in the other areas of the same general roof construction that had leaked. Burket confirmed that the source of the leak which caused plaintiff's fall was due to the seams separating in the seals of the roof. (Burket, p. 56.) Burket also testified that the two other leaks in the roof that had required repair had also needed to be resealed. (Burket, p. 23.)

In summary, plaintiff argues, and this court agrees, that the determination of constructive notice is a question of fact to be determined by a jury. *Lederhandler v. Bolotini,* 402 Pa. 250, 167 A.2d 157 (1961). It is also a question of fact for the jury to decide if a landowner knew or should have discovered the defect upon reasonable inspection. *PennDOT v. Patton,* 546 Pa. 562, 568, 686 A.2d 1302, 1305 (1997), citing *Carrender v. Fitterer,* 503 Pa. 178, 185, 469 A.2d 120, 124 (1983). The plaintiff has presented sufficient evidence to create a genuine issue of material fact with regard to defendant's notice of the water on the floor and the leak in the roof, and as to whether defendant's roof inspection policy was sufficient in light of the other problems encountered with the 1992 renovation/expansion project roof. The jury must determine the sufficiency of plaintiffs' proof regarding defendant's negligence in this case.

## ORDER

And now, October 16, 2003, it is the order of this court that defendant's motion for summary judgment is hereby denied.

