**EDITH WILLIAMS, Appellant/Plaintiff**

**v.**

**UNITED CORPORATION d/b/a PLAZA EXTRA, Appellee/Defendant**

S. Ct. Civ. No. 2007-118

Supreme Court of the Virgin Islands

July 10, 2008

K. GLENDA CAMERON, ESQ., Rohn & Cameron, LLC, St. Croix, USVI,
*Attorney for Appellant.*

CARL A. BECKSTEDT III, ESQ., Bryant, Barnes, Moss, Beckstedt & Blair, LLP, St. Croix, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; SWAN, *Associate Justice*; and ROSS, *Justice Pro Tem*[1].

## OPINION OF THE COURT

(July 10, 2008)

HODGE, C.J. Appellant, Edith Williams (hereafter "Williams"), appeals the Superior Court order granting the Motion for Summary Judgment brought by Appellee, United Corporation d/b/a Plaza Extra (hereafter "Plaza"). For the reasons which follow, we will vacate the order granting summary judgment and remand to the Superior Court with instructions that this case is to be reinstated on the trial calendar.

## I. BACKGROUND

On April 8, 2002, Williams was shopping at Plaza's grocery store in Frederiksted, St. Croix when she slipped and fell, allegedly suffering injuries to her neck, back, waist, knees, and ankles. At about 4:00 p.m., Williams was passing a "reduced price items" display, located in the main aisle in front of the check-out counter, when she slipped on a liquid on the floor and fell to her hands and knees. Williams claims that she saw muddy footprints in the liquid and that the liquid caused her jean shorts to become "soaked." Because it did not have a scent, Williams concluded that the liquid was most likely water.

Williams's slip and fall was witnessed by another customer, Carmen George (hereafter "George"). Approximately eighty-one seconds prior to Williams's fall, George and another woman arrived at the reduced price display and proceeded to sift through the dented cans and items and place some of them into a cart. Notably, George gave three conflicting accounts of what she witnessed that day. First, in an incident report taken the day of the fall, George stated that she felt something wet while searching through the bins, causing her to back away from the display at the exact time that Williams walked by the display and slipped. (J.A. at 276.) In the

---

[1]    Associate Justice Maria M. Cabret has been recused from this matter. Justice *Pro Tem* Edgar D. Ross, a Retired Judge of the Superior Court of the Virgin Islands, sits in her place by designation pursuant to V.I. CODE ANN. tit. 4 § 24(a).

incident report, she stated that she saw "a white liquid" both "before and after" Williams's fall. (*Id.*)

Nearly three years later, in a sworn affidavit dated January 14, 2005, George stated that she "was walking in Plaza Extra" when she observed "a can of spray or something of that nature that was leaning against other products in a basket causing it to leak." (J.A. at 278.) She also asserted that the liquid "was visible to [her]." (*Id.*) However, in her January 20, 2005 deposition, George later testified that she did not notice spray leaking until after Williams fell and that, if it had been leaking when she reached the display or if it had leaked on her while she was sorting through the bins, she would have alerted someone. (J.A. at 254-55.) She could not recall whether it was "a can of spray or if it was a punctured can, a dented can or what." (J.A. at 262.) George concluded that the leak must have happened as a result of her own actions of sifting through the items in the bin. (J.A. at 263.)

Plaza's digital video surveillance system recorded the slip and fall. (J.A. at 234.) The video also depicts the area where the fall occurred prior to Williams's fall. Specifically, it shows several of Plaza's employees walking, without slipping or falling, over the area where Williams fell during a period ranging from twelve minutes to thirty-six seconds before the fall. Additionally, the video depicts a custodian sweeping in the vicinity of the area approximately twelve minutes before the fall.

On July 29, 2002, Williams filed a complaint, and Plaza answered on October 7, 2002. On March 23, 2005, Plaza moved for summary judgment on the grounds that Williams failed to prove Plaza had actual or constructive notice of the substance. Williams filed an opposition motion, and Plaza replied. On October 1, 2007, the Superior Court entered an order granting Plaza's motion for summary judgment and dismissing the action with prejudice. Williams filed her Notice of Appeal on October 29, 2007.

## II. DISCUSSION

### A. Jurisdiction and Standards of Review

"The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees [and] final orders of the Superior Court." V.I. CODE ANN. tit. 4 § 32(a). Because the order granting summary judgment was entered on October 1, 2007 and Williams's Notice of

Appeal was filed on October 29, 2007, the Notice of Appeal was timely filed. *See* V.I. S. Ct. R. 5(a)(1) ("the notice of appeal required by Rule 4 shall be filed with the Clerk of the Superior Court within thirty days after the date of entry of the judgment or order appealed from . . .").

This Court exercises plenary review of a Superior Court's grant of summary judgment. *Maduro v. American Airlines, Inc.*, Civ. No. 2007/029, 2008 V.I. Supreme LEXIS 24, *7 (V.I. February 28, 2008). On review, we apply the same test that the lower court should have utilized. *Id.* (citing *Saldana v. Kmart Corp.*, 43 V.I. 361, 364, 260 F.3d 228, 231-32 (3d Cir. 2001)).

Because summary judgment is a drastic remedy, *see Ness v. Marshall*, 660 F.2d 517, 519 (3d Cir. 1981), it should be granted only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).[2] The United State Supreme Court, in *Celotex Corp. v. Catrett*, created a burden-shifting paradigm wherein the moving party's initial burden is met by merely "pointing out to the . . . court that there is an absence of evidence to support the non-moving party's case." *See* 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986). The non-moving party then has the burden of "set[ting] out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). As to materiality, only those facts that "might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

When reviewing the record, this Court must view the inferences to be drawn from the underlying facts in the light most favorable to the non-moving party, and we must take the non-moving party's conflicting allegations as true if "supported by proper proofs." *See Seales v. Devine*, Civ. No. 2007-040, 2008 V.I. Supreme LEXIS 23, at *4 (V.I. March 3, 2008); *see also Haugh v. Allstate Ins. Co.*, 322 F.3d 227, 230 (3d Cir. 2003). The non-moving party may not rest upon mere allegations but must present actual evidence showing a genuine issue for trial. *See*

---

[2] The Federal Rules of Civil Procedure are applicable to the Superior Court of the Virgin Islands pursuant to Superior Court Rule 7.

*Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510. Such evidence may be direct or circumstantial, but "the mere possibility that something occurred in a particular way is not enough, as a matter of law, for a jury to find it probably happened that way." *Saldana*, 260 F.3d at 232, 234. Therefore, to survive summary judgment, the nonmoving party's evidence must "amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Id.* at 232 (internal quotations omitted).

Importantly, in our analysis, this Court may not itself weigh the evidence and determine the truth; rather, we decide only whether there is a genuine issue for trial such that a reasonable jury could return a verdict for the non-moving party. *See Anderson*, 477 U.S. at 255, 106 S. Ct. at 2514.

### B. There was Sufficient Evidence of Constructive Notice to Defeat a Motion for Summary Judgment

As a business owner, Plaza owes a duty to its shoppers. *Morris v. Gimbel Bros., Inc.*, 394 F.2d 143, 145 (3d Cir. 1968). In particular, business owners must "maintain [the] premises in a reasonably safe condition for the contemplated uses thereof and the purposes for which the invitation was extended." *Id.* In order to prevail in a negligence action, one of the essential elements Williams must prove is that Plaza had actual or constructive notice of the substance on the floor. *See* RESTATEMENT (SECOND) OF TORTS § 343 (1965).[3] Section 343 reads, in relevant part:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> > (a) knows or by the exercise of reasonable care would discover the condition . . .

RESTATEMENT (SECOND) OF TORTS § 343. Because Williams does not allege actual notice on the part of Plaza, she must prove that the substance was on the floor long enough to give Plaza constructive notice of its presence, such that Plaza should have discovered the danger and taken steps to remedy

---

[3]  In the absence of contrary local law, the Restatement is considered binding law in the Virgin Islands, pursuant to title 1, section 4 of the Virgin Islands Code.

it. *See Saldana*, 260 F.3d at 232; *Berkeley v. Pueblo Supermarket*, 740 F.2d 230, 236 (3d Cir. 1984).

Williams contends that three pieces of evidence, individually or taken together, sufficiently establish constructive notice in this case. First, she points to her own testimony that, while still on the floor after her fall, she noticed muddy footprints in the clear substance. Second, Williams points to her testimony that her jean shorts were "soaked" and "wet through to the skin" to support the theory that the liquid must have been a significant puddle which was on the floor for a long enough period of time that Plaza should have noticed it. Finally, Williams points to the two earlier statements given by George — namely, her statement on the "Fall and Slip Witness Form" (J.A. at 276-77) and her pre-deposition Affidavit (J.A. at 278-79). We consider each piece of evidence in turn.

### 1. *The Muddy Footprints*

Williams cites to *Evans v. Canteen Corp.*, No. CIV. A. 94-2381, 1995 U.S. Dist. LEXIS 8103 (E.D.P.A. June 13, 1995), to support her argument that the alleged presence of muddy footprints raises a genuine issue of material fact as to the issue of constructive notice. Specifically, she points to the court's statement that:

> [a]n important factor in actions where the plaintiff slips on a spilled substance is whether there are footprints or "tracking" through and around the area of spill. Tracking indicates the spilled substance has been present long enough to give the proprietor constructive knowledge of its presence.

*Id.* at *2. (internal citations omitted). Ultimately, however, the *Evans* court did not find any evidence of tracking in that case.

Plaza contends that the *Evans* court's statement is "contrary to law[4]." (Appellee's Br. 10.) On the contrary, courts have found evidence of

---

[4]    In support of its argument, Plaza cites to four cases each of which is distinguishable from the instant case. Three of the cases, *Jerry Lee's Grocery, Inc. v. Thompson*, 528 So. 2d 293, 296 (Miss. 1988), *Kimbell, Inc. v. Blount*, 562 S.W.2d 10, 12-13 (Tex. App. 1978), and *Hernandez v. Kmart Corp.*, No. 235818, 2004 Mich. App. LEXIS 2000 (Mich. App. July 20, 2004), differ because, unlike in this case where Williams offers several pieces of evidence as to constructive notice, the plaintiffs' *sole* testimony in those cases was the presence of shopping cart tracks or dirty footprints. The fourth case cited by Plaza, *Polcari v. U.S.*, Civ. A. No. 88-2374 (CRR), 1991 U.S. Dist. LEXIS 14985 (D.D.C. October 23, 1991), is also distinguishable because, unlike Williams who has not yet been able to offer her evidence at trial,

footprints to be relevant to the constructive notice analysis. *See, e.g., Roberts v. Hartford Fire Ins. Co., et al.*, 926 So. 2d 121, 127 (La. App. 2006) ("Nor did the plaintiff present any evidence as to the condition of the liquid after the fact that would suggest that it had been there for some period of time, such as that some areas of the spill had dried, that shopping cart tracks or footprints were in the liquid, or that the liquid was dirty."); *Masotti, et al. v. Waldbaums Supermarket*, 227 A.D.2d 532, 533 (N.Y. App. Div. 1996) ("absent any proof that the dressing was dirty, or had footprints or wheel marks in it, a jury could not reasonably infer that the substance had been on the floor for any appreciable length of time to permit the defendant's employees to discover and remedy it"); *Skipper v. Barnes Supermarket*, 573 So. 2d 411, 413 (Fla. App. 1991) ("Indicia of constructive notice in the context of debris on the floor which subsequently causes a slip and fall injury includes evidence of thawing (when the debris involves frozen materials), cart tracks, footprints, crushing, and so forth.").

Additionally, footprints may in and of themselves be sufficient evidence of constructive notice. *See Winn-Dixie Kwik Chek v. Travis*, 414 So. 2d 962 (Ala. Civ. App. 1982). On remand from the Alabama Supreme Court, the *Travis* court held that a plaintiff's testimony about dirt and footprints on a brown bag was itself sufficient evidence from which a trier of fact could find that the foreign substance was on the floor long enough to give the grocery store notice. *Id.* In its pre-remand opinion, the intermediate appellate court had initially held against plaintiff, stating that "the more logical inference" is that the footprints and dirt got on the bag when plaintiff himself stepped on it. *Winn-Dixie Kwik Chek v. Travis*, 414 So. 2d 954, 956 (Ala. Civ. App. 1981), *rev'd*, 414 So. 2d 956 (Ala. 1982).

█ Similar to the *Travis* court, the trial court in this case inferred that the alleged muddy footprints were likely caused by either Williams when she fell or by George when she attempted to stop Williams from falling. (J.A. at 9.) It is a basic principle, however, that trial judges should not weigh the evidence, make credibility determinations, or draw "legitimate inferences" from the facts when ruling upon summary judgment motions because these are the functions of the jury. *See Anderson*, 477 U.S. at 255, 106 S. Ct. at 2513. In asking us to accept the version of the facts

---

the plaintiff there presented her evidence at trial and the court held that she failed to prove constructive notice by a preponderance of the evidence.

improperly accepted by the trial court, Plaza is asking this Court to do that which we cannot do. Like the trial court, we are prohibited from weighing the evidence, making credibility determinations, and drawing the most logical inferences from the facts. *Id.* Accordingly, we hold that Williams's testimony regarding muddy footprints could, at least when combined with her other evidence, lead a jury to conclude that Plaza had constructive notice.[5]

## 2. *Williams's Soaked Jean Shorts*

Williams cites to *Mather v. Pa. State Univ.*, No. 338, 64 Pa. D. & C. 4th 381 (Pa. Com. Pl. 2003), to support her argument that her testimony as to her soaked jean shorts establishes that there must have been a significant puddle on the floor which Plaza should have noticed. In *Mather,* the plaintiff slipped and fell on the defendant's hotel premises, causing "his pants and various papers that he was holding to become soaked with water." *Id.* at 383. Additionally, the *Mather* plaintiff noticed, while still on the ground, that water was dripping from the ceiling onto his head. *See id.* In holding that the plaintiff had supplied sufficient evidence of constructive notice to defeat summary judgment, the court relied upon several pieces of evidence, one of which was the plaintiff's testimony regarding how wet his pants, shoulders, and papers had gotten. *See id.* at 388-90. Significantly, the court also stated that it was not dispositive that no other witnesses noticed the water on the floor despite the fact that the location was a "high traffic area." *See id.* at 391.

Although the *Mather* court did not hold that the alleged soaking of the plaintiff's jeans was enough by itself to defeat summary judgment, it is clear that, contrary to Plaza's argument, a court can consider a plaintiff's own testimony on such an issue when determining whether summary judgment should be denied. Moreover, Plaza's argument that *Mather* is distinguishable because "[c]ommon sense dictates that a substance will accumulate much faster when being released from under pressure [as from a spray can] as opposed to coming from a non-pressurized ceiling drip" is unavailing. (Appellee's Br. 14.) On review of a grant of summary judgment, we must view "the inferences to be drawn from the underlying

---

[5]    We find it unnecessary in this case to determine whether such evidence would be sufficient by itself to create a genuine issue of fact.

facts" in the light most favorable to Williams, the nonmoving party. *See Haugh*, 322 F.3d at 230. Furthermore, in asking this Court to use our common sense, Plaza is again asking us to weigh the evidence, draw favorable inferences, and determine the truth which we may not do at the summary judgment stage. *See Anderson*, 477 U.S. at 255.

Other jurisdictions have found the fact that the plaintiff's clothes were very wet to be evidence of the length of time a substance was on the floor. For instance, in *Marino v. Stop & Shop Co.*, No. CV 9800764483S, 1999 Conn. Super. LEXIS 2477, at *13 (Conn. Super. Sept. 16, 1999), the court stated:

> the defendant failed to maintain the premises in a safe condition based on numerous facts, including: the plaintiff's deposition testimony that it had been raining all morning but that the defendant failed to place any cones or mats at the location of the fall; that the wet floor caused him to fall; and that *after the fall his backside was all wet.*

(emphasis added). Notably, many of the courts ruling against a plaintiff place emphasis on the fact that the plaintiff failed to provide evidence that her clothes were wet after her fall. *See, e.g., Maans v. Giant of Md., L.L.C.*, 161 Md. App. 620, 624, 871 A.2d 627, 629 (Md. App. 2005) ("[plaintiff] never felt water, nor did she sense that her clothes were wet"); *Barker v. Eagle Food Centers, Inc.*, 261 Ill. App. 3d 1068, 1070, 634 N.E.2d 1276, 1278 (Ill. App. 1994) ("[Plaintiff] further testified that she did not notice water on the floor before or after she fell. She . . . *did not notice whether her clothes were wet after she fell.*" (emphasis added)).

Therefore, although Williams's claim that her jean shorts were soaked may not itself be sufficient, when combined with additional evidence like muddy footprints, it could reasonably lead a jury to conclude that the substance had been on the floor long enough that Plaza should have discovered it.

### 3. *George's Conflicting Witness Statements*

The Superior Court opinion granting Plaza's motion for summary judgment made no mention of the two earlier statements made by George on the "Fall and Slip Witness Form" and in her pre-deposition Affidavit. Instead, the judge discussed only George's deposition testimony — her most recent statement regarding the slip and fall. Specifically, the trial court's opinion reads:

During deposition, George was asked about whether or not she saw anything on the floor when she approached the rack . . . During the roughly minute and one half that George was standing there she did not feel anything spraying her, nor did she see an [sic] spray on the ground. Furthermore, if she were being sprayed during that time, she would have noticed.

(J.A. at 9.) However, when asked if she saw anything on the floor before or after William's fall, George answered, on the "Fall and Slip Witness Form" signed the day of the incident: "Before *and* after — a white liquid." (J.A. at 276-77) (emphasis added). Additionally, in her pre-deposition affidavit, signed six days before her deposition, George stated that "[she] was walking in Plaza Extra . . . when [she] observed a can of spray or something of that nature leaning against other products in a basket causing it to leak" and that the liquid "was visible to [her]." (J.A. at 278-79.)

Additionally, in summarizing George's deposition testimony, the trial judge clearly overlooked the following testimony:

Q: Okay. Is it possible that the item could have been leaking and you'd just not noticed it?
A: That's possible too.

Therefore, when the trial judge accepted George's testimony that she must have caused the leak within the minute and a half before Williams walked by, the judge was improperly weighing the evidence in contravention of the summary judgment rule. Again, it is for the jury, not the court, to analyze all of the possibilities presented by the evidence and make the determination as to which is most likely the truth. *See Anderson*, 477 U.S. at 255. Similarly, it is not for the trial court or this Court to determine the credibility of a witness who has made several conflicting statements. *See id.*

■ In light of the discussion above, we conclude that the trial court committed error in granting summary judgment, and we hold that a jury could find the muddy footprints, the wetness of Williams's jean shorts, and the earlier statements given by George sufficient to create a triable issue of material fact as to whether the substance was on the floor long enough that Plaza should have discovered and remedied it. *See David v. Pueblo Supermarket, Inc.*, 740 F.2d 230, 236 (3d Cir. 1984) ("Circumstantial evidence that food was left on the floor for an inordinate period of time can be enough to constitute negligence, and it is a question

of fact for the jury whether, under all the circumstances, the defective condition of the floor in the store existed long enough so that it would have been discovered with the exercise of reasonable care."). Williams has offered "more than a scintilla" of evidence tending to create a genuine issue of fact regarding constructive notice. *Saldana*, 260 F.3d at 232.

## C. The "Mode of Operation" Rule

Alternatively, Williams asks this Court to adopt a "mode of operation" rule,[6] which essentially functions as a substitute for the notice element of a negligence action. The rule relieves a plaintiff of the need to prove notice where the defendant business's routine practice of selling a product in a specific manner is likely to create hazardous conditions caused by customers' reasonably anticipated carelessness. *See Wollerman v. Grand Union Stores, Inc.*, 47 N.J. 426, 221 A.2d 513, 514 (1966); *Maans*, 871 A.2d at 637; *Tom v. S. S. Kresge Co., Inc.*, 130 Ariz. 30, 633 P.2d 439, 442 (Ariz. App. 1981). Given our ruling herein, however, we find it unnecessary to consider the merits of adopting a "mode of operation" rule in this case.[7]

## III. CONCLUSION

Because the trial court contravened the summary judgment rule by weighing the evidence and determining the credibility of the witnesses, we vacate the Superior Court order granting summary judgment in Plaza's favor. Williams's testimony regarding the muddy footprints and her soaked jean shorts, together with George's various statements, creates a genuine issue of material fact for the jury as to whether the substance was on the floor long enough to give Plaza constructive notice of its presence. On remand, the Superior Court is instructed to reinstate this case on the trial calendar.

---

[6]    To date, at least twenty-one states have adopted a version of the "mode of operation" rule. *See Kelly v. Stop and Shop, Inc.*, 281 Conn. 768, 918 A.2d 249, 255 (2007); *Sheehan v. Roche Bros. Supermarkets, Inc.*, 448 Mass. 780, 863 N.E.2d 1276, 1284 (2007); *Maans*, 161 Md. App. at 636, 871 A.2d at 636-37 (collecting cases for Arizona, Colorado, Florida, Hawaii, Idaho, Indiana, Kansas, Mississippi, Missouri, New Jersey, New Mexico, Oklahoma, Tennessee, Texas, Utah, Vermont, Washington, Wisconsin, and Wyoming).

[7]    However, because we do not hold that the "mode of operation" rule is unavailable in this jurisdiction, Williams is free to press and develop this theory at trial.