IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

FABIA LAUDAT DOVER, Personal )
Representative of THE ESTATE OF JOHN )
TROY ANDRE JOSEPH, )
           )
          Plaintiff, )
        v. )
UNIVERSITY OF THE VIRGIN ISLANDS, )
           )
          Defendant. )

**CASE NO.: SX-15-CV-146**

**2020 VI Super 45U**

## MEMORANDUM OPINION and ORDER

¶ 1     Before the Court is Defendant University of the Virgin Islands' (UVI) Motion for Summary Judgment, filed June 14, 2019. Plaintiff filed her Opposition to Motion for Summary Judgment July 17, 2019.[1] For the reasons that follow, UVI's Motion will be denied.

### BACKGROUND

¶ 2     On April 19, 2013, the University of the Virgin Islands hosted a tramp on the grounds of its campus on St. Croix. The public was encouraged to attend the event that was advertised by flyer, radio and word-of-mouth. Fusion Band, a band popular with students and young adults was featured, followed by an after-party with two local DJs in the UVI Great Hall. UVI students and members of the public participated in the tramp that moved across a significant portion of the campus: "From the top of Palm Drive, the head of the campus, it start, enter the campus, and you do a loop—a small loop around to the front of the Evans Center, and then you go in front of the residence hall, and then you headed east to the top of the nursing building, the back of the campus, and end in front of the Great Hall."[2] On this route, the tramp travelled in front of the cafeteria, past the security office. The incident giving rise to this action occurred in the parking lot to the rear of the cafeteria, also referred to as the southern parking lot.

¶ 3     UVI campus security personnel worked the night of the event on their normal schedule, in two shifts: one shift from 4:00 p.m. to midnight, and another starting at midnight to 8:00 a.m. the next day. The University's regular security officers throughout their shifts maintained roving and

---

[1] UVI's Motion was filed before Plaintiff filed her Second Amended Complaint amending the identity of the parties and claims the Plaintiff presents in the action. The Motion remains viable because it focuses on liability issues that remain unaffected by the filing of the Second Amended Complaint.

[2] Opposition, Exhibit 3, Deposition of Hedda Finch-Simpson, UVI Student Activity Supervisor, p. 11-12.

foot patrols, traversing the campus, checking to make sure that buildings and doors were secured. Special events required hiring additional security who were to perform services specific to the event, while campus security would continue to secure the premises. On the night of the event in issue, in addition to its regular two-person security force, UVI hired two additional security officers: an experienced local security guard and an off-duty V.I. police officer. UVI's Security Manual provided procedures security personnel were to follow to secure UVI property and the safety of persons on the premises, and included directions for St. Croix campus security during special or social events. No security was specifically assigned to the Great Hall or to the various parking lots throughout the campus in which guests were invited to park for the special April 19, 2013 event. The tramp lasted from about 8:00 p.m. to about 11:00 p.m.

¶ 4    John Troy Andre Joseph was one of more than 100 members of the public who attended the UVI sponsored event. He parked his vehicle in the lot behind the cafeteria, where many other vehiciles parked, although the lot was not full. A security maintenance check on April 22, 2013, within the week following the incident, found that five of the six pole lights in that parking lot and two building-mounted lights behind the cafeteria were not working. Those results were similar to the most recently conducted UVI St. Croix campus annual Outdoor Lighting Survey of January 23, 2013, three months before the incident, which reported four cafeteria parking lot lights and two cafeteria building lights out.

¶ 5    At approximately 11:20 p.m. on April 19, 2013, while Troy Joseph was seated in his vehicle, an unidentified assailant approached him, attempted to rob the chain he wore around his neck, and shot him when he resisted the robbery. Don Luke George, a friend of Troy Joseph who also attended the event, saw no police or security personnel in the area. According to George, an unidentified man walked up to the vehicle in which Troy Joseph was seated, pulled out a gun and reached for Joseph's chain. The assailant shot Joseph and ran to another vehicle which sped away from the parking lot.

¶ 6    Another eyewitness, Craig Velasquez, told police that he heard Troy Joseph shout "he try to rob my chain" and "I got shot." Velazquez got into Joseph's vehicle, moved him over to the passenger seat and drove to the hospital. Other onlookers jumped into their truck and attempted to follow the vehicle in which the assailant had fled from the parking lot.

¶ 7    No one in the parking lot called the Virgin Islands Police Department or UVI security. No security personnel were present at or responded to the scene, although one security officer observed two trucks speeding in and out of the parking area behind the cafeteria after 11:00 p.m. That activity was not reported. UVI security personnel became aware of the shooting at about 12:25 a.m. when VIPD officers who had responded to a report of a gunshot victim at the hospital traveled thereafter to the UVI campus to investigate and notified UVI security officers. Troy Joseph died of his injuries at 9:55 a.m. the following morning, April 20, 2013.

¶ 8    The original Complaint, filed April 17, 2015, alleged two causes of action against UVI: for wrongful death under 5 V.I.C. §76; and a survivors' claim under 5 V.I.C. §77. The latter was dismissed as barred by the applicable statute of limitations by Order entered July 13, 2015. Plaintiff's remaining claim for wrongful death, pursuant to 5 V.I.C. §76, brought by Fabia Dover as Personal Representative of the Estate of John Troy Andre Joseph is the subject of Defendant's Motion.

## DISCUSSION

¶ 9    In evaluating a motion for summary judgment, the Court must determine whether there exists a genuine dispute of material fact; one that would impact the outcome of the case under applicable law. *Machado v. Yacht Haven U.S.V.I., LLC*, 61 V.I. 373, 379-80 (V.I. 2014) (quoting *Williams v. United Corp.*, 50 V.I. 191, 194 (V.I. 2008)). Such a dispute is genuine if it is material to the claim presented and a reasonable trier of fact could decide that factual issue in favor of the non-moving party. *Id.* at 391-92. "Because summary judgment is a drastic remedy, it should be granted only when the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Williams*, 50 V.I. at 194 (internal citation omitted).

¶ 10    Reviewing UVI's Motion, the Court does not weigh the credibility of the evidence offered. Instead, all inferences from the evidence are drawn in favor of the nonmoving party, and any conflicting allegations, if properly supported by the record, are resolved in favor of the nonmovant. *See Perez v. Ritz-Carlton (V.I.), Inc.*, 59 V.I. 522, 527 (V.I. 2013) (citing *Williams*, 50 V.I. at 194-95). The moving party bears the burden of demonstrating the absence of any genuine issue of material fact. *Martin v. Martin*, 54 V.I. 379, 389 (V.I. 2010). If the "moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if

the nonmoving party would have the ultimate burden of persuasion at trial." *Id.* at 391 (citation omitted). If the moving party does carry its initial burden to produce evidence of the absence of material facts in dispute, then "the burden shifts to the non-moving party to present 'affirmative evidence' from which a jury might reasonably return a verdict in his favor." *Chapman v. Cornwall,* 58 V.I. 431, 436 (V.I. 2013) (citations omitted).

¶ 11 "A party asserting that a fact… is genuinely disputed must… support the assertion by: (i) citing to particular parts of materials in the record…; or (ii) showing that the materials cited do not establish the absence… of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." V.I. R. Civ. P. 56(c)(1). Although the facts are to be interpreted in the light most favorable to the nonmoving party, the nonmoving party "may not rest upon mere allegations and must present actual evidence showing a genuine issue for trial." *Machado,* 61 V.I. at 379.

¶ 12 To determine whether summary judgment is appropriate, the Court must determine the substantive law governing the cause of action. *See Perez,* 59 V.I. at 528. Plaintiff's claim for wrongful death under 5 V.I.C. § 76 alleges that Troy Joseph's death was proximately caused by UVI's negligence. Plaintiff claims that UVI is liabile in that its premises were poorly lighted; and that its security personnel were inadequately trained and inadequacity deployed on the campus.

¶ 13 In the Virgin Islands, premises liability actions follow the same four-factor test as traditional negligence claims: "(1) a legal duty of care to the plaintiff, (2) a breach of that duty of care by the defendant, (3) constituting the factual and legal cause of (4) damages to the plaintiff." *Machado,* 61 V.I. at 380. The Supreme Court "has recognized foreseeability as 'the touchstone of premises liability in the Virgin Islands' because forseeability permeates every element of a negligence claim." *Aubain v. Kazi Foods of the V.I., Inc.,* 70 V.I. 943, 949 (V.I. 2019) (citing *Machado,* 61 V.I. at 394). "Given the subjective nature of this test, 'this Court's jurisprudence has consistently favored—wherever possible—the adjudication of negligence cases by a jury, a preference codified by the Legislature in 5 V.I.C. § 1451(a), instead of by a single judge at summary judgment.'" *Rymer v. Kmart Corp.,* 68 V.I. 571, 576 (V.I. 2018) (citing *Machado,* 61 V.I. at 399).

¶ 14 The first factor of Plaintiff's negligence claim requires the Court to consider the legal duty owed by UVI to persons on its property, including Troy Joseph. In *Machado,* the Supreme Court

used "foreseeability of harm to ascertain a land possessor's duty of reasonable or ordinary care." *Aubain*, 70 V.I. at 949 (citing *Machado*, 61 V.I. at 386). Because "the touchstone of premises liability in the Virgin Islands is foreseeability — if a possessor could anticipate that the conditions on its property would result in injury to those foreseeably using the property, the possessor can be held liable for those injuries." *Machado*, 61 V.I. at 394. The existence of a legal duty flows from the owner of the premises having "superior knowledge of the property, as the possessor is in the best position to know of potentially dangerous conditions on the property – and therefore has the heightened duty to protect those it invites onto the property from foreseeable harm caused by those conditions." *Id.* at 386 (citing *Perez*, 59 V.I. at 533).

¶ 15    Here, UVI has acknowledged that "[i]t is our responsibility to maintain a safe campus, safe environment."[3] The duty of UVI to those on its premises for the April 19, 2013 event therefore depends on whether there were potentially dangerous conditions on the property that were or should have been forseeable to UVI. In its Motion, UVI presents its October 2012 Annual Security Report, reporting campus statistics on security policies and crime.[4] The Report documents that there were seven felony-level offenses (including sexual assault, robbery, burglary and vehicle thefts) and two drug law violations on the St. Croix campus during the reporting period, but that there were no homicides and no aggravated assaults reported. UVI notes that there were no arrests or disciplinary referrals for illegal weapons possession on the St. Croix campus between 2009 and 2011. UVI argues that because the data shows that no violent crimes involving a firearm or resulting in a person's death occurred on its St. Croix campus during the years preceding the incident, "the type of criminal attack suffered by the decedent was not reasonably foreseeable and UVI had no duty to protect the decedent from such an unforeseen attack." Motion, at 9.

¶ 16    Plaintiff counters, disputing the accuracy of the Security Report, presenting a 911 call log summary and VIPD report, reflecting reported offenses at UVI's St. Croix campus between 2008 and 2014, including robbery, burglary, vehicle theft, assaults, weapon possession and drug abuse, allegedly committed by students and third parties, that were not included in the Annual Security

---

[3] Opposition, Exhibit 2, Rule 30(b)(6) Deposition of UVI, Nereida Washington, p. 23.

[4] Motion, Exhibit I. As an institution of higher learning, federal law requires that UVI document and calculate crimes reported on its campus. The Clery Act, 20 U.S.C. § 1092(f), mandates that each institution publish its campus security report compiling crime statistics for the preceding three years. UVI's Annual Security Report of October 1, 2012 includes campus crime data for the years 2009-2011.

Report. Plaintiff argues that the number of reported criminal incidents on its campus was sufficient to put UVI on notice of potentially dangerous conditions during an event open to the public such as that held April 19, 2013.

¶ 17    Plaintiff further points to the record evidence to suggest that potential harm to invitees was foreseeable when UVI hosted events: "when we have live bands, we understand that we may need to bring in additional security."[5] At the event in issue, members of the public were permitted to park vehicles in any lot on campus, including the southern lot to the rear of the cafeteria where Troy Joseph was assaulted. Plaintiff contends that although two additional security personnel were brought on for the event, deployment of one officer in the security office and two-to-three others on patrol throughout the entire campus was insufficient to assure the safety of UVI's invited guests. Plaintiff argues that a reasonable jury could infer that UVI failed to provide adequate security, and that an armed assault/robbery of a patron in the partially lighted parking lot in the rear of the campus without security presence was foreseeable.

¶ 18    "The issue of whether a defendant's behavior comformed to a standard of conduct is a question of fact." *In re Catalyst Litig.*, 2010 V.I. LEXIS 126, *12 (V.I. Super. 2010). "In most cases, foreseeability is a question of fact," *Osborne v. PSMT*, LLC, 2017 V.I. LEXIS 15, at *11 (V.I. Super. 2017). Similarly, whether a defendant acted reasonably given the existing conditions at the time the harm occurred, is a question of fact to be decided by a jury. *See Perez*, 59 V.I. at 537 ("whether [defendants] acted reasonably given the conditions on the day of Ms. Perez's fall — including the adequacy of the maintenance schedule and the decision not to put out warning signs - [] are not appropriate for a court to determine at the summary judgment stage. Instead, questions of whether a party acted reasonably — which can defeat or mitigate liability — are issues of fact that must be decided by a jury").

¶ 19    Plaintiff asserts that UVI breached its duty of reasonable care by failing to provide to the public invited to attend the tramp and dance party adequate security and sufficient lighting throughout the campus generally, and in the southern parking lot behind the cafeteria particularly. The result of that breach, Plaintiff posits, was a dangerous condition on its premises that proximately contributed to the incident in which Troy Joseph was killed.

---

[5] Opposition, Exhibit 1, Depostion of Nereida Washington, p. 38.

¶ 20 The adequacy of the lighting in the parking lot is disputed in the record. The VIPD report cites an unidentified witness who claimed there was "exceptional lighting" in the area. Don Luke George testified that he only saw the assailant as he approached Troy Joseph's vehicle. He testified that he could see where he was driving and could see persons and colors of the vehicles in the parking lot. Yet, he also testified that in the area where Troy Joseph's vehicle was parked there was no light. UVI points to evidence that its security personnel monitored campus lighting and submitted reports about lighting conditions. UVI operates a computer software program by which members of the student body may submit work orders whenever physical conditions on the campus need to be addressed, including lighting conditions. UVI notes that it had received no notices of any issues, no complaints, and no other concerns presented about lighting conditions in the parking lot where the incident occurreed.

¶ 21 Yet, as noted above, a security maintenance check shortly after the incident revealed that five of the six pole lights in the parking lot and two building-mounted lights behind the cafeteria were out of service. The findings of that post-incident review coincided closely to the results of UVI's annual Outdoor Lighting Survey dated January 23, 2013, three months prior to the incident. That survey found that a total of 46 lights throughout the campus were out of service, including 35 pole-mounted street lights, four of which were in the cafeteria parking lot. Nine exterior building lights were also reported inoperable, including four exterior lights on the cafeteria building. The record contains no evidence of lights repaired or replaced. Plaintiff argues that these facts create a genuine issue of material fact regarding whether on the date of the incident UVI breached its duty to use reasonable care to keep its premises free of hazardous conditions by maintaining reasonably safe lighting conditions in the southern parking lot. The summary judgment record includes insufficient undisputed evidence to permit the Court to determine as a matter of law that lighting was adequate and that UVI did not breach its duty to keep its premises reasonably safe by providing adequate lighting.

¶ 22 Similarly, as to Plaintiff's claim that UVI provided inadequate campus security for the April 19, 2013 event, it remains for a jury to determine whether UVI's assignment and deployment of four security personnel, including two additional security guards hired specifically for the event, satisfied its duty to keep the campus reasonably safe from foreseeable harm. No UVI security personnel were assigned to the parking lot when and where the incident occurred, and the question

whether there was sufficient security coverage at the event to which the public was invited and encouraged to attend represents a genuine issue of material fact to be decided by a jury.

¶ 23    It is the function of the jury at trial, and not the Court on summary judgment, to determine whether the potential harm to Troy Joseph was foreseeable, and the nature and extent of UVI's duty to keep its premises safe through adequate security and lighting. It is for a reasonable jury to determine whether UVI breached its duty by failing to protect persons it invited onto its property from foreseeable harm caused by potentially dangerous conditions on its premises. In reviewing UVI's Motion for Summary Judgment, the Court determines whether Plaintiff has submitted evidence sufficient to allow a reasonable jury to conclude that UVI's actions or omissions beached a duty of reasonable care to Troy Joseph, which breach proximately resulted in harm to Troy Joseph. *Machado*, 61 V.I. at 393-94. By the evidence in the summary judgment record, when viewed in the light most favorable to Plaintiff, Plaintiff has met this burden, and the unresolved questions of fact remain to be decided by a jury at trial. Accordingly, for the reasons set forth herein, it is hereby

ORDERED that Defendant's Motion for Summary Judgment is DENIED.

DATED: March 20, 2020.

DOUGLAS A. BRADY, JUDGE

ATTEST:
TAMARA CHARLES
Clerk of the Court

By: _____
    Court Clerk II