**RENEE CHARLESWELL, Plaintiff**
**v.**
**THE BANK OF NOVA SCOTIA, Defendant**

Civil No. 605/96

Territorial Court for the Virgin Islands

Division of St. Thomas and St. John

May 1, 2001

36

JOEL HOLT, ESQ., Holt & Russell, Christiansted, St. Croix, V.I., *Attorney for Plaintiff*

MATTHEW J. DUENSING, ESQ., Jones, Stryker, Duensing, Casner & Dollison, St. Thomas, V.I., *Attorney for Defendant*

HODGE, *Judge*

## MEMORANDUM OPINION

(May 1, 2001)

Before the Court is Defendant The Bank of Nova Scotia's ("Scotiabank") Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Defendant's Motion shall be GRANTED IN PART and DENIED IN PART.

### Facts

Defendant Scotiabank employed Plaintiff as a bank teller in a branch office in St. Thomas, Virgin Islands. Plaintiff worked for the bank from June 1990 until January 1995 when she voluntarily resigned to complete

her studies at the University of the Virgin Islands. On January 10, 1995, after Plaintiff had submitted her letter of resignation, but three days before she left the bank, an alleged unauthorized withdrawal of $4,800.00 was made from a savings account owned by Ulalie and James Smith. The suspect transaction was discovered on February 7, 1995, *i.e.* almost one month later, when the customers indicated that they had not authorized the withdrawal. Plaintiff was no longer working at the bank at the time of the discovery.

The bank called the Virgin Islands Police Department and reported the suspect transaction. The police then commenced an investigation, resulting in the eventual arrest of Plaintiff during a class she was attending at the University. The investigation involved, among other things, speaking with employees of the bank and examining the withdrawal slip involved with the transaction. The documents showed Plaintiff's teller identification number as well as the initials of her supervisor on the withdrawal slip. In addition, Plaintiff admitted printing, but not signing, the name of the accountholder on the withdrawal slip in the space designated for printing the name.

Subsequent to the arrest, Territorial Court Judge Brenda J. Hollar determined that probable cause existed to charge Plaintiff with forgery associated with the unauthorized withdrawal. These findings were based solely on the testimony of the arresting officer, Officer John Meyers, Sr., who related what had been told to him by the bank and Plaintiff Charleswell. Following the results of an FBI handwriting analysis on the relevant withdrawal slip, the Government of the Virgin Islands moved to dismiss the charges against Plaintiff without prejudice. By Order dated March 12, 1996, the Court granted the Government's motion, dismissing the charges.

Thereafter, Plaintiff brought this action against the bank, alleging malicious prosecution, breach of contract, and false imprisonment in connection with her arrest.[1] In addition, Plaintiff claims that several defamatory statements were made by employees of the bank, charging her with criminal conduct, and harming her reputation. In response, the bank has filed this Motion for Summary Judgment, seeking summary judgment in its favor on all counts, together with supporting documents

---

[1] The Complaint initially charged unfair labor practices as well, but Plaintiff has voluntarily withdrawn this claim.

and a memorandum of law. Plaintiff has filed an opposing memorandum, and has provided supporting documents as well.

## Discussion

Summary judgment is proper when there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56. Thus, summary judgment will be granted against a party who "fails to make a showing sufficient to establish existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Bellows International, LTD. v. Caribbean Liquors*, 44 V.I. 3 (Terr. Ct. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)). The Court should grant summary judgment only where, after viewing all evidence presented in a light most favorable to the nonmoving party, it can conclude that no reasonable trier of fact could find for the nonmovant. *Id.*

When a motion for summary judgment is made and is supported, an adverse party may not simply rely on the allegations as set forth in his pleadings. Rather, the nonmovant must present some evidence of the existence of a genuine issue of material fact. *Carino v. Golden*, 19 V.I. 371 (1983). A mere scintilla of evidence will not suffice; rather, there must be enough of a showing that the jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).

### A. False Imprisonment

■ Plaintiff claims that her arrest was wrongful and that the bank is liable for her arrest because the bank instituted the criminal investigation against her. However, there can be no action for false imprisonment where the underlying arrest was lawful. *Yeamans v. Snook*, 15 V.I. 129 (D.V.I. 1979). In order to prove the liability of one who instigates an arrest, it must be a false arrest, that is, one made without legal authority. "One who instigates or participates in a lawful arrest, as for example an arrest made under a properly issued warrant by an officer charged with the duty of enforcing it, may become liable for malicious prosecution ... but he is not liable for false imprisonment since no false imprisonment has occurred." *Deary v. Evans*, 19 V.I. 581 (D.V.I. 1983); *Yeamans v. Snook*, 15 V.I. 124 (D.V.I. 1979); *Burt v. Ferrese*, 871 F.2d 14, 17 (3d Cir. 1989) (supervisor of water department not liable where arrest was

pursuant to warrant upon showing probable cause); RESTATEMENT (SECOND) OF TORTS § 45A, comment b (1977).

■ ■ Perhaps more importantly, the Territorial Court has held that "private parties are not responsible for obtaining arrest warrants. As a result, the claim that the arrest was false and without good cause *cannot* be brought against a private party." *Monrose v. B and O Enterprises*, 26 V.I. 168, 170 (Terr.Ct. 1991) (emphasis added). In *Monrose,* the Court found that absolute immunity protects a defendant's statements to the Police Department, so that there is no need to inquire into the truth or malicious intent of defendant because the absolute immunity will protect them from damages based on its testimony, *"even if [defendant] knew the statements were false and made them with malice." Id.* (emphasis added). Based on the absolute immunity afforded witnesses, Scotiabank cannot be found liable for false arrest or imprisonment based on statements made to the Police Department. Therefore, Defendant's Motion for Summary Judgment shall be GRANTED with respect to the False Imprisonment claim.

## B. Malicious Prosecution

■ Plaintiff also alleges malicious prosecution based upon the bank's reporting the unauthorized transaction to the police. A cause of action for malicious prosecution will lie against one who (1) initiated the institution of the proceedings; (2) without probable cause; (3) primarily for a purpose other than bringing the offender to justice. *Deary v. Three Unnamed Police Officers*, 746 F.2d 185 (3d Cir. 1984); RESTATEMENT (SECOND) OF TORTS § 653 (1977). In this case, it is undisputed that the bank acted only after discovering that money had been withdrawn from an account without authorization from the accountholder. However, there is evidence that could suggest that obtaining justice was not the bank's primary purpose when it contacted the police.

As the bank was aware, Plaintiff's supervisor Hugh Brown approved the transaction, initialed the withdrawal slip and, was required to assume all responsibility associated with the withdrawal. As to the Plaintiff, the transaction was not unauthorized because Plaintiff's supervisor specifically authorized it and assumed responsibility for the propriety of the transaction. Nonetheless, after discovering the missing money, the bank notified the police, in contravention of their own policy of conducting a preliminary internal investigation. The police inquired as to

41

the identity of the Plaintiff based on the information provided (or omitted) by the bank.

Significantly, Plaintiff alleges that the police were unaware that the suspect transaction was the responsibility of Hugh Brown, and not of Plaintiff. Further, the investigating officer, Corporal Meyers, admitted during his deposition, that he did not know (*i.e.* was not informed by the bank) that the tellers are not responsible for transactions over five hundred dollars which had to be authorized by a supervisor as was done in the instant case. Further, he was not informed that printing the name of an accountholder on a withdrawal slip was accepted and required bank procedure. Presumably, had the officer been given this information, Plaintiff would not have been arrested and would not have faced forgery charges associated with her writing the accountholder's name onto the withdrawal slip.

Although a Judge of the Territorial Court found probable cause to charge Plaintiff with forgery, based largely upon Corporal Meyers' testimony, that fact does not go to the issue of *whether the bank was justified* in calling the police and thereby instigating a criminal investigation. There may have been probable cause for *the officer* to arrest Plaintiff but that says little for the bank. The issues in this case are whether Scotiabank initiated the proceedings; and, if so, whether Scotiabank was justified in doing so; finally, whether Scotiabank's primary purpose in instigating the proceedings was to bring the offender to justice. These are factual issues, which remain in question. *Yeamans v. Snook*, 15 V.I. 124 (D.V.I. 1979).

In light of the bank's alleged failure to provide the investigating officer with pertinent information regarding Plaintiff's role in the suspect transaction, the bank's intention remains at issue. Further, since the bank was aware that Mr. Brown, and not Plaintiff, was responsible for the transaction, an issue remains as to whether the bank had sufficient cause to justify contacting the police and directing attention to the Plaintiff. *See, Rosando v. Housing Authority*, 719 F. Supp 268, 271 (S.D.N.Y. 1989) (resort to the processes of law must be justified); RESTATEMENT (SECOND) OF TORTS § 653 (1977). As these issues as to material facts remain, Defendant's Motion for Summary Judgment shall be DENIED with respect to the claim for Malicious Prosecution.

42

## C. Defamation

█ Plaintiff also alleges that two employees of the bank published defamatory statements about her in connection with the suspect withdrawal and the subsequent police investigation. A statement is defamatory if it tends to harm the reputation of another so as to lower him in the estimation of the community or, if such statement might deter another from dealing with him. *Cohen v. Raedler*, 17 V.I. 46 (Terr. Ct. 1980).

█ To establish liability plaintiff must prove (1) that defendant made a false statement concerning another; (2) that the statement was an unprivileged publication to a third party; (3) that the defendant was at fault amounting at least to an act of negligence; and (4) either the actionability of the statement irrespective of special harm or, that the publication caused harm to the plaintiff. *Id.*; *Carino v. Golden*, 19 V.I. 371 (1983); RESTATEMENT (SECOND) OF TORTS § 558 (1977).

█ Publication of a statement which imputes a criminal offense to another is slander *per se*—that is, slander that is actionable without proof of special harm. *Carino v. Golden*, 19 V.I. 371 (1983); *Virgin Islands v. May*, 384 F. Supp. 1035, 11 V.I. 52 (D.V.I. 1974); RESTATEMENT (SECOND) OF TORTS § 570 (1977). Injury and damages will be presumed as a matter of law without proof of special loss. *See, Cohen v. Raedler*, 17 V.I. 46 (1980); *Carino v. Golden*, 19 V.I. 371 (1983). Falsely stating that another has committed a crime is slander (*i.e.* defamation by oral publication) *per se* because, like stating that a woman is unchaste, the injury suffered to the defamed person's reputation is clear. *Id.* Such defamatory statements will be presumed false and the defendant will bear the burden of proving truth as a defense. *Cohen v. Raedler*, 17 V.I. 46 (1980).

In her memorandum, Plaintiff alleges that bank employees falsely published[2] (*i.e.* stated orally to a third person) that she was guilty of a

---

[2] Apparently the courts are divided on the question of whether communications between supervisory employees of a corporation, acting within the scope and course of their employment, can constitute publication to a third person. Some authorities regard the communication simply as 'the corporation talking to itself.' *See, Luttrell v. United Tel. Sys., Inc.*, 9 Kan. App. 2d 620, 683 P.2d 1292 (1984). However, the Restatement clearly explains that "the fact that the defamatory matter is communicated to an agent of the defamer does not prevent it from being a publication ..." RESTATEMENT (SECOND) OF TORTS § 577 comment 3 (1977). In this

43

crime, or of conduct amounting to a crime. In addition, Plaintiff has provided the affidavit of Mr. Alex Wilson in support of her claim. In his affidavit, Mr. Wilson explains that he heard Allison Francis, teller-supervisor, make the following statement regarding Plaintiff: "I can see now why she resigned, she stole the money so she could live large." In addition, Mr. Wilson heard Michelle Cardozo, branch manager, state: "Yes, I know she stole the money. I know she is your friend, and you don't want to believe she did it, but she did. I didn't tell you this before because they didn't want her to know, in fear that she might leave the island. Her child's father is dying, and she is going to jail." These statements are unambiguous and, insofar as they falsely express that Plaintiff stole money, they are defamatory on their face.

██ Plaintiff has offered evidence that one of the declarants was a teller-supervisor and the other, Ms. Cardozo, was the branch manager who acted on behalf of the bank when making the initial police report of the suspect incident. Both of the declarants were Scotiabank supervisory employees. An employer is subject to liability for defamatory comments of its employees when they are acting within the scope of their employment, or, within their apparent authority. RESTATEMENT (SECOND) OF AGENCY § 247. In this case, the declarants were commenting upon a suspect banking transaction, allegedly preformed by one of the bank's former tellers. Therefore, a reasonable listener could easily conclude that they were speaking as a representative of the bank when they commented upon the status of the investigation by saying "she stole the money so she could live large" or "I know she stole the money". In so commenting, they may have subjected the bank to vicarious liability. However, an issue as the scope of the declarants' employment remains for the fact finder. *See, Yeamans v. Snook,* 15 V.I. 129, 139 (D.V.I. 1979).

██ In addition, whether defendant acted, through its agents, with disregard for the truth is a question which can only be determined by the trier of fact. *Bingle v. Neill,* 17 V.I. 349 (D.V.I. 1980). Therefore,

---

jurisdiction, in the absence of local law or precedent to the contrary, the rules of the common law, as expressed in the Restatements of the law approved by the American Law Institute are considered the common law of the Virgin Islands. *See,* Title 1 V.I.C. § 4. *See also, Isidor Paiewonsky Assocs. v. Sharp Properties, Inc.,* 26 V.I. 228, 761 F. Supp. 1231 (D.V.I. 1991).

because disputed issues remain as to material facts, Defendant's Motion for Summary Judgment shall be DENIED with respect to the portion of the Complaint alleging Defamation.

## D. Breach of Contract

Finally, Plaintiff alleges that Scotiabank breached its employment contract with the Plaintiff by failing to transfer responsibility for the transaction to Plaintiff's supervisor in accordance with Scotiabank's policy. Plaintiff argues that she was required to seek approval from a supervisor for all transactions over five hundred dollars. Consequently, Plaintiff argues that, according to bank policy, the supervisor was to assume responsibility for these transactions. Therefore, Plaintiff claims, the bank failed to relieve her of responsibility for the transaction, as evidenced by the bank's alleged failure to explain these protocols to the investigating officer, Plaintiff's subsequent arrest and, the purported statements of the bank's manager and teller-supervisor accusing Plaintiff of a crime.

In addition, Plaintiff argues that, according to the terms of her employment, Scotiabank was obligated to conduct a preliminary *internal* investigation of any suspect transactions. Presumably, such a policy would protect employees, like the Plaintiff, from facing unfounded criminal charges. Further, bank employees would be shielded from humiliation associated with arrest as a result of their banking transactions.

Although Plaintiff was no longer an employee of the bank at the time the money was reported missing, the bank was bound by its employment contract during the time plaintiff was an employee. The contact was in effect between the parties at the time of the alleged unauthorized withdrawal. In addition, the evidence is clear that Plaintiff worked for the bank for almost five years; she apparently resigned on good terms; had friends working at the bank; and, was still living on St. Thomas when the police were contacted. Nonetheless, the bank, apparently, did not even attempt to investigate the suspect transaction before calling the police.

An issue remains as to whether the bank failed to conduct an internal investigation, breaching its contract with Plaintiff. In addition, Plaintiff's supervisor was to assume responsibility for all transactions over a certain dollar amount, pursuant to bank policy, and whether he did so is a question of fact, best left to a jury. Therefore, Defendant's Motion

for Summary Judgment shall be DENIED with respect to the Breach of Contract claim.