**MICHAEL PALISOC and BENJAMIN PALISOC, Appellants/Plaintiffs**

**v.**

**DR. VINCENTE POBLETE, Appellee/Defendant**

S. Ct. Civil No. 2013-0041

Supreme Court of the Virgin Islands

February 25, 2014

608

JUDITH L. BOURNE, ESQ., The Bourne Law Office, PLLC, St. Thomas, USVI, *Attorney for Appellants*.

KERRY E. DRUE, ESQ., Law Offices of Kerry E. Drue, St. Thomas, USVI, *Attorney for Appellee*.

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and MOLLOY, *Designated Justice.*[1]

## OPINION OF THE COURT

(February 25, 2014)

HODGE, *Chief Justice*. Michael and Benjamin Palisoc[2] appeal the Superior Court's May 2, 2013 Order, which entered summary judgment in favor of Dr. Vincente Poblete. For the reasons that follow, we affirm the May 2, 2013 Order.

## I. STATEMENT OF FACTS AND PROCEDURAL POSTURE

In October 2007, Santos Chuidian, Benjamin, and Benjamin's son, Michael, approached Poblete and Dr. Cosme Baretta about opening a Filipino restaurant to cater to the large Filipino population among cruise ship crew members in St. Thomas. Poblete and Baretta agreed to provide the capital to finance the venture. It was also agreed that Chuidian and Benjamin would work at the restaurant as the general manager and head chef, respectively, and Michael would handle various office duties. That same month, the articles of incorporation were filed and the required business licenses and permits were secured to open their establishment. On December 5, 2007, the men opened The Barrio Fiesta in St. Thomas.

Barrio was essentially divided into two establishments, each side with its own cash register. One side of Barrio provided the sale of grocery items, telephone rentals, internet access and phone cards, while the other side served as a restaurant. Donato Valeza worked the grocery-side cash register and Chuidian and Michael worked the restaurant cash register. Each cash register was equipped to automatically generate sales reports through a computer system known as the Z-Out Drawer Count Report; however, shortly after Barrio's opening, the cash registers frequently became out of order. Eventually, the grocery cash register remained out of order for a long period of time. As a result, the grocery cash register was used primarily as a cash drawer.

[1] Associate Justice Ive Arlington Swan is recused from this matter. Hon. Robert A. Molloy, a judge of the Superior Court, sits in his place by designation pursuant to 4 V.I.C. § 24(a).

[2] Because the two plaintiffs possess the same last name, we refer to them by their first names to minimize confusion.

At the end of each day, Valeza placed the cash receipts from the sale of phone cards in an envelope and gave it to Michael. Michael and Chuidian then counted the rest of the grocery register's cash sales to create daily financial reports of the earnings. These funds would ultimately be added with the earnings from the restaurant and given to Poblete to deposit in the bank.

Operating in this manner, suspicion arose that Michael and Chuidian were not accurately reporting the daily sales. First, Michael and Chuidian were observed to convene privately for several hours before arriving at a final tally for the daily financial reports. Second, Poblete's son, Jose, accessed the computer cash register and found the existence of multiple sale summary reports that Chuidian never provided to Poblete. Third, Jose found numerous empty envelopes labeled "phone cards" in a desk drawer. Jose also observed that the Z-Out Drawer Count Report, which was supposed to be run once at the close of every business day, was being run several times a day, suggesting that attempts were being made to manipulate the reports.

Poblete and Baretta called a meeting on January 12, 2008, to address these concerns. There are differing accounts of the events at this meeting. According to Poblete, the meeting was called to discuss the cash register concerns and to reassign Chuidian and Michael away from cash and computer operations. Chuidian, on the other hand, claimed that at the meeting Poblete announced that non-management employees, with the exception of Michael, would be getting a percentage of the company's profits and these profits would be taken from Chuidian's ownership share of Barrio.

Six days later, on January 18, 2008, a second meeting was held. Chuidian did not attend and was terminated from Barrio. Michael was demoted and a month later left Barrio. Sometime after the January 18, 2008 meeting, accounting clerk Ethel Ramirez analyzed Barrio's records. She found eleven instances — between December 18, 2007, and December 30, 2007 — in which proceeds from phone card sales were not turned over to Poblete. Poblete reported his suspicion of embezzlement to the Virgin Islands Department of Justice.

Special Agent Kenneth Schulterbrandt, Jr., was assigned to the case and performed an investigation in which he interviewed multiple witnesses and personally analyzed Barrio's records. Based on his investigation, Agent Schulterbrandt concluded that probable cause existed

611

to charge Chuidian and Michael with the crimes of embezzlement, grand larceny, and forgery. Assistant Attorney General Denise Counts concurred with Agent Schulterbrandt's findings and sought an arrest warrant for Chuidian and Michael, which was issued by a Superior Court judge on January 16, 2009. As a result, the People filed an Information charging Michael with embezzlement, grand larceny, and forgery. His first prosecution resulted in a hung jury. In his second prosecution, the jury acquitted Michael of all charges.[3]

Following his acquittal, Michael and his father, Benjamin, both filed the present civil action against Poblete. Michael alleged malicious prosecution while Benjamin alleged intentional infliction of emotional distress. Poblete moved for summary judgment on both counts. On May 2, 2013, the Superior Court, following a hearing on the motion, entered an Order granting Poblete's motion for summary judgment. Michael and Benjamin timely filed a notice of appeal on May 13, 2013.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

This Court has jurisdiction over this appeal pursuant to title 4, section 32(a) of the Virgin Islands Code, which provides that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." Because the Superior Court granted Poblete's motion for summary judgment and, in so doing, adjudicated all of the claims of each party, the May 2, 2013 Order is a final order within the meaning of section 32. *Sealey-Christian v. Sunny Isle Shopping Ctr., Inc.*, 52 V.I. 410, 418 (V.I. 2009).

This Court exercises plenary review of a Superior Court's grant of summary judgment. *Williams v. United Corp.*, 50 V.I. 191, 194 (V.I. 2008). "On review, we apply the same test that the lower court should have utilized." *Id.* "Because summary judgment is a drastic remedy, it should be granted only when 'the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter

---

[3] The arrest warrant for Chuidian was never executed as he could not be found for service.

of law.' " *Id.* (quoting former wording of FED. R. CIV. P. 56(c)). "When reviewing the record, this Court must view the inferences to be drawn from the underlying facts in the light most favorable to the nonmoving party, and we must take the non-moving party's conflicting allegations as true if 'supported by proper proofs.' " *Joseph v. Hess Oil V.I. Corp.,* 54 V.I. 657, 664 (V.I. 2011) (quoting *Williams,* 50 V.I. at 194-95). "[T]o survive summary judgment, the nonmoving party's evidence must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Id.*

## B. Malicious Prosecution

In deciding whether the trial court erred in dismissing Michael's malicious prosecution claim at the summary judgment stage, we begin our analysis by determining the elements of a malicious prosecution action that Michael was required to sufficiently prove. *Sealey-Christian,* 52 V.I. at 419 (explaining that summary judgment may be entered against a party who fails to sufficiently show the existence of an element essential to that party's case on which that party will bear the burden of proof at trial). There is only one prior disposition by this Court that mentions, in passing, the elements for a malicious prosecution cause of action. *Seales v. Devine,* S. Ct. Civ. No. 2007-0040, 2008 V.I. Supreme LEXIS 23 (V.I. Mar. 3, 2008) (unpublished). In that case, this Court quoted the RESTATEMENT (SECOND) OF TORTS § 653 which dictates that a defendant is subject to liability for malicious prosecution if: "(a) he initiates or procures the proceedings without probable cause and primarily for a purpose other than that of bringing an offender to justice, and (b) the proceedings have terminated in favor of the accused." *Id.* 2008 V.I. Supreme LEXIS 23 at *4 n.1 (quoting RESTATEMENT (SECOND) OF TORTS § 653 (1977)). But *Seales* did not apply RESTATEMENT (SECOND) OF TORTS § 653; rather, it noted that what the plaintiff had labeled as a cause of action for "malicious prosecution" had been a misnomer for the "wrongful initiation of civil proceedings" tort. *Id.* 2008 V.I. Supreme LEXIS 23 at *4. Therefore we have yet to formally adopt the elements of a malicious prosecution cause of action.

This Court is vested with the "supreme judicial power of the Territory," which includes "the power to . . . modify the common law." *Banks v. Int'l Rental & Leasing Corp.,* 55 V.I. 967, 978 (V.I. 2011) (quoting 4 V.I.C. § 21). In determining the appropriate common law rule,

613

we consider three non-dispositive factors: "(1) whether any Virgin Islands courts have previously adopted a particular rule; (2) the position taken by a majority of courts from other jurisdictions; and (3) most importantly, which approach represents the soundest rule for the Virgin Islands." *Simon v. Joseph*, 59 V.I. 611, 623 (V.I. 2013) (citing *Matthew v. Herman*, 56 V.I. 674, 680-81 (V.I. 2012)).

In reviewing case law of the Virgin Islands, we note that the District Court of the Virgin Islands has stated that "a successful cause of action for malicious prosecution requires that the [d]efendant (1) initiate[ ] the institution of criminal proceedings; (2) without probable cause; (3) primarily for a purpose other than bringing an offender to justice." *Greene v. V.I. Water & Power Auth.*, No. 1:06-CV-11, 2012 U.S. Dist. LEXIS 144382 (D.V.I. Oct. 5, 2012) (unpublished); *see also Charleswell v. Bank of N.S.*, 44 V.I. 36, 41 (V.I. Super. Ct. 2001) (citing *Deary v. Three Unnamed Police Officers*, 746 F.2d 185, 194 n.11 (3d Cir. 1984) and RESTATEMENT (SECOND) OF TORTS § 653 (1977). Additionally, several jurisdictions have adopted the malicious prosecution elements from RESTATEMENT (SECOND) OF TORTS § 653 verbatim.[4] Moreover, many other jurisdictions have cited to and relied on the comments from RESTATEMENT (SECOND) OF TORTS § 653, but articulate the elements in slightly different ways.[5] Thus, the majority of jurisdictions have adopted the Restatement's position on malicious prosecution in some form.

---

[4] *See, e.g.*, *Mulligan v. Rioux*, 229 Conn. 716, 643 A.2d 1226, 1235 & n.19 (1994); *North Carolina Farm Bureau Mut. Ins. Co. v. Cully's Motorcross Park, Inc.*, 366 N.C. 505, 742 S.E.2d 781, 786 (N.C. 2013); *Hess v. Cnty. of Lancaster*, 100 Pa. Commw. 316, 514 A.2d 681, 683 (1986).

[5] *Rasmussen Buick-GMC, Inc. v. Roach*, 314 N.W.2d 374, 375 (Iowa 1982) ("[W]e set out these six elements of malicious prosecution: (1) a previous prosecution, (2) instigation or procurement thereof by defendant, (3) termination thereof by an acquittal or discharge of plaintiff, (4) want of probable cause, (5) malice in bringing the prosecution on the part of the defendant, and (6) damage to the plaintiff."); *Radzinski v. Doe*, 469 Mich. 1037, 677 N.W.2d 796, 797 (2004) ("[T]he burden is on the plaintiff to prove: (1) the defendant initiated a criminal proceeding against the plaintiff; (2) the criminal proceedings terminated in the plaintiff's favor; (3) the private person who instituted or maintained the prosecution lacked probable cause; and (4) the prosecution was undertaken with malice or a purpose in instituting the criminal claim other than bringing the offender to justice."); *Stead-Bowers v. Langley*, 636 N.W.2d 334, 338 (Minn. Ct. App. 2001) ("[T]he elements of malicious prosecution are (1) the suit must be brought without probable cause and with no reasonable ground on which to base a belief that the plaintiff would prevail on the merits; (2) the suit must be instituted and prosecuted with malicious intent; and (3) the suit must ultimately terminate in favor of the defendant."); *Piper v. Scher*, 221 N.J. Super. 54, 533 A.2d 974, 975-76 (1987)

■ Most importantly, we find that the soundest rule for the Virgin Islands is to adopt the following elements for a malicious prosecution cause of action: (1) the initiating of or procuring of a criminal proceeding against the plaintiff by the defendant; (2) the absence of probable cause for the proceeding; (3) malicious intent on the part of the defendant; and (4) termination of the proceeding in favor of the plaintiff. We also adopt

("[O]ne may successfully maintain such an action only upon demonstrating that the criminal action was brought without reasonable or probable cause, that it was actuated by malice, that plaintiff suffered a special grievance and that the criminal proceeding terminated favorably to the plaintiff."); *Ladeas v. Carter*, 845 S.W.2d 45, 48 (Mo. Ct. App. 1992) ("A plaintiff is obligated to plead and prove six elements to recover on a malicious prosecution cause of action. They are as follows: (1) the commencement of a prosecution against plaintiff; (2) instigation by the defendant; (3) the termination of the proceeding in favor of the plaintiff; (4) the want of probable cause for the prosecution; (5) the defendant's conduct was actuated by malice; and (6) the plaintiff was damaged."); *Vehrs v. Piquette*, 210 Mont. 386, 684 P.2d 476, 478 (1984) ("The six elements [for malicious prosecution] are: (1) a judicial proceeding was commenced and prosecuted against the plaintiff; (2) the defendant was responsible for instigating, prosecuting or continuing such proceeding; (3) there was lack of probable cause for defendant's acts; (4) defendant was actuated by malice; (5) the judicial proceeding terminated favorably for plaintiff; and, (6) the plaintiff suffered damage."); *McKinney v. Okoye*, 282 Neb. 880, 806 N.W.2d 571, 575 (2011) ("A plaintiff in a malicious prosecution case must prove that [1] proceedings were commenced or instituted against him or her; [2] the defendant caused the proceedings to be commenced or instituted; [3] the proceedings terminated in the plaintiff's favor; [4] the defendant lacked probable cause to institute or procure the proceedings; [5] the defendant acted with malice; and [6] the plaintiff suffered damages."); *Weststar Mortgage Corp. v. Jackson*, 2003-NMSC 002, 133 N.M. 114, 61 P.3d 823, 828 (2002) ("The elements of this cause of action [for malicious prosecution] were defined as follows: (1) the initiation of judicial proceedings against the plaintiff by the defendant; (2) an act by the defendant in the use of process other than such as would be proper in the regular prosecution of the claim; (3) a primary motive by the defendant in misusing the process to accomplish an illegitimate end; and (4) damages."); *Froehlich v. Ohio Dep't of Mental Health*, 114 Ohio St. 3d 286, 2007 Ohio 4161, 871 N.E.2d 1159, 1162 (2007) ("The tort of malicious prosecution in a criminal setting requires proof of three essential elements: '(1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused.' "); *Danielson v. Hess*, 2011 SD 82, 807 N.W.2d 113, 115-16 (2011) ("There are six elements required to prove malicious prosecution: (1) The commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant against plaintiff, who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; (6) damage conforming to legal standards resulting to plaintiff."); *Roberts v. Fed. Express Corp.*, 842 S.W.2d 246, 247-48 (Tenn. 1992) (the three elements essential to a cause of action for malicious prosecution are that (1) the defendant initiated a prior lawsuit or judicial proceeding against the plaintiff without probable cause, (2) the defendant brought the prior action with malice, and (3) the prior action was terminated in the plaintiff's favor).

615

RESTATEMENT (SECOND) OF TORTS § 653 for its commentary analysis in applying these elements. This rule we now adopt protects an important public interest, specifically, the interest in citizens making good faith reports of criminal conduct to the authorities. This interest is balanced by the elements requiring the absence of probable cause and the presence of malice, which prevent an individual from using the legal system in a vindictive or harmful way. Furthermore, while jurisdictions vary in the language and number of elements used in their respective descriptions of the malicious prosecution cause of action, most of them essentially incorporate all the elements we have adopted.

### C. The Summary Judgment Award

On appeal, Michael argues that the trial court erred in granting Poblete's motion for summary judgment because the trial court erred in its application of the probable cause standard for malicious prosecution claims.[6] When analyzing the existence of probable cause, the Superior Court stated that "probable cause was in fact determined in this case in the eyes of the investigator[,] . . . in the eyes of the Assistant Attorney General[,] . . . and in the eyes of the [Superior Court judge]" who presided over the criminal case. (J.A. 76.) But the correct analysis for determining probable cause in a malicious prosecution case is whether Poblete, not the police, the prosecutor or the judge, reasonably believed (a) that the person whom he accused has acted or failed to act in a particular manner, (b) that those acts or omissions constitute the offense that he charges against the accused, and (c) that he is sufficiently informed as to the law and the facts to justify him in initiating or continuing the prosecution. RESTATEMENT (SECOND) OF TORTS § 662 (1977); *Charleswell*, 44 V.I. at 42 ("Although a Judge of the Territorial Court found probable cause to charge [p]laintiff with forgery . . . that fact does not go to the issue of whether the [defendant] was justified in calling the police and thereby instigating a criminal investigation.") (emphasis omitted). Thus, we agree with

---

[6] Michael and Benjamin provide no argument in their brief as to why this Court should reverse the summary judgment award pertaining to Benjamin's complaint for intentional infliction of emotional distress. Therefore, the issue is waived for purposes of appeal. *See* V.I.S.CT.R. 22(m) ("Issues that were . . . not raised or objected to before the Superior Court . . . are deemed waived for purposes of appeal."); *Harvey v. Christopher*, 55 V.I. 565, 571 (V.I. 2011) ("issues raised in a notice of appeal which are not argued in the appellant's brief are waived" (quoting *Bernhardt v. Bernhardt*, 51 V.I. 341, 345-46 (V.I. 2009))).

Michael that the Superior Court misapplied the probable cause standard. *See Charleswell*, 44 V.I. at 42; *Hirth v. Hall*, 1981-NMCA 050, 96 N.M. 58, 627 P.2d 1257, 1259 (1981) ("it may be said that the defendant has probable cause only when a reasonable man in his position would believe, and the defendant does in fact believe, that he has sufficient information as to both the facts and the applicable law to justify him in initiating the criminal proceeding" (quoting RESTATEMENT (SECOND) OF TORTS § 662 cmt. j)); *D'Angelo v. Mussler*, 290 S.W.3d 75, 80 (Ky. Ct. App. 2009) (the question of lack of probable cause "is to be determined in the light of those facts that the [complainant in the underlying proceedings] knows or reasonably believes to exist at the time when he acts").

 Nevertheless, the Superior Court's error was harmless since Poblete was entitled to summary judgment even when analyzed under the correct standard. V.I.S.CT.R. 4(i) ("No error or defect in any ruling or order or in anything done or omitted by the Superior Court . . . is ground for granting relief or reversal on appeal where its probable impact . . . is sufficiently minor so as not to affect the substantial rights of the parties."). In this case, there is no evidence that Poblete acted unreasonably by contacting the police and directing their attention to Michael.[7] The evidence is undisputed that Michael handled a significant amount of cash every day and was one of two employees responsible for preparing financial reports of the daily earnings. Poblete had serious concerns about Michael's reporting based on Jose's findings and Michael's suspicious behavior. Poblete only contacted the police after accounting clerk Ramirez verified his suspicions by finding evidence of misappropriation in Barrio's records.[8] Therefore, the record establishes that Poblete reasonably

---

[7] Poblete initiated proceedings after discussing the matter unofficially with Assistant Attorney General Karen McDowell, who recommended that he report the matter to the Virgin Islands Department of Justice. (J.A. 37.)

[8] Michael asserts that this case is analogous to *Charleswell*, where the plaintiff, a former bank teller, alleged malicious prosecution based upon the defendant-bank's reporting to the police that the plaintiff made an unauthorized transaction. 44 V.I. at 39. In that case the court denied the bank's motion for summary judgment because it found evidence indicating that the bank failed to provide the investigating officer with pertinent information regarding the teller's role in the suspect transaction. Further, there was a question as to whether the bank had sufficient cause to justify contacting the police since the bank was aware that a different teller was ultimately responsible for the transaction at issue. *Id.* at 41-42. In this case, unlike *Charleswell*, there is no evidence presented that Poblete lied or failed to provide the investigating officers with pertinent information regarding Michael's role in the suspect transac-

believed that Michael was misappropriating company funds and thus had sufficient probable cause to report his suspicions to the Virgin Islands Department of Justice.[9] As a result, Michael failed to sufficiently prove the second element of a malicious prosecution claim, the lack of probable cause.[10]

██ Michael also failed to sufficiently establish the existence of any material dispute as to another element essential to his case on which he would bear the burden of proof at trial: the defendant's initiation or procurement of a criminal proceeding. Regarding this element, comment "g" to section 653, "Influencing a public prosecutor," is instructive and provides in relevant part:

> When a private person gives to a prosecuting officer information that he believes to be true, and the officer in the exercise of his uncontrolled discretion initiates criminal proceedings based upon that information, the informer is not liable under the rule stated in this Section even though the information proves to be false and his belief was one that a reasonable man would not entertain. The exercise of the officer's

---

tions. Furthermore, unlike *Charleswell*, there is no evidence that Poblete had insufficient cause to contact the police and direct their attention to Michael and Chuidian. Therefore, the facts of this case are distinguishable from *Charleswell*.

[9] "Under Virgin Islands law, both embezzlement and obtaining money by false pretenses constitute felonies if the money embezzled or unlawfully obtained is $100 or more, and misdemeanors if less than $100 in value." *Gumbs v. People*, 59 V.I. 784, 789 (V.I. 2013) (citing 14 V.I.C. §§ 834(1)-(2); 1094(a)(1)-(2)). Embezzlement is defined as the fraudulent appropriation of property by a person to whom it has been entrusted. 14 V.I.C. § 1087. Additionally, the crime to obtain money by false pretenses occurs when someone knowingly and designedly, by false or fraudulent representation or pretenses, defrauds any other person of money or property. 14 V.I.C. § 834.

[10] Michael also argues on appeal that summary judgment is not warranted because facts presented in an affidavit by Chuidian create a genuine issue of material fact. We disagree. An issue of material fact is genuine and consequently summary judgment is improper, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Sealey-Christian*, 52 V.I. at 421 (quoting *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). While each affidavit provides a different reason for the cash register's malfunction, such malfunction is not a fact that is material. Additionally, both affidavits differ regarding the events at the meeting occurring on January 12, 2008, but this difference is also not material. Of material importance, both affidavits confirm that Michael handled the cash earnings from phone card sales and that he was in charge of creating daily cash receipts during the time of suspected misappropriation. Chuidian's affidavit also fails to provide an alternative theory as to why accounting clerk Ramirez found eleven instances of misappropriation. Thus, the affidavits do not create a genuine issue of material fact.

618

discretion makes the initiation of the prosecution his own and protects from liability the person whose information or accusation has led the officer to initiate the proceedings.

If, however, the information is known by the giver to be false, an intelligent exercise of the officer's discretion becomes impossible, and a prosecution based upon it is procured by the person giving the false information. In order to charge a private person with responsibility for the initiation of proceedings by a public official, it must therefore appear that his desire to have the proceedings initiated . . . *was the determining factor in the official's decision to commence the prosecution, or that the information furnished by him upon which the official acted was known to be false.*

RESTATEMENT (SECOND) OF TORTS § 653 cmt. g (emphasis added). Therefore, to prove that Poblete initiated or procured the criminal proceeding, Michael must demonstrate that Poblete's desire to have the criminal proceedings initiated was the determining factor in the government commencing prosecution or that Poblete provided false information to the police. Since there is no evidence that Poblete provided false information to the police, Michael must prove that Poblete's complaint was the determining factor for the criminal prosecution. We agree with those other jurisdictions that have adopted the RESTATEMENT (SECOND) OF TORTS § 653 and define "determining factor" as something more than active participation or consultation on part of the defendant, such as by urging or insisting that the prosecution be brought.[11]

---

[11] *Chapman v. Grimm & Grimm, P.C.*, 638 N.E.2d 462, 466 (Ind. Ct. App. 1994) (evidence failed to establish that malicious prosecution defendants did more than encourage or advise the party to file the underlying civil proceeding); *Weststar Mortgage Corp.*, 61 P.3d at 829-30 (reporting an incident and cooperating with prosecution are not sufficient as a matter of law to establish that the defendant "initiated the criminal proceedings"); *Walford v. Blinder,.Robinson & Co.*, 793 P.2d 620, 625 (Colo. App. 1990) (a non-litigant actively instigated an underlying civil proceeding when the non-litigant "gave . . . input" on the facts of the case; was "specifically consulted with;" and although initially against the lawsuit, "participated in the ultimate decision" to file it); *Checkley v. Boyd*, 170 Ore. App. 721, 14 P.3d 81, 91-92 (2000) (a person who is the "primary catalyst" for the suit may be liable for its commencement and finding that allegations that the underlying civil suit would not have been brought without the non-litigants' active encouragement, coercion, and pressure were sufficient to withstand dismissal); *Williamson v. Guentzel*, 584 N.W.2d 20, 24-25 (Minn. Ct. App. 1998) (malicious prosecution did not lie where the defendant was not shown to have insisted or urged that the underlying civil lawsuit be filed).

■ Here, viewing the facts in the light most favorable to Michael, there is ample evidence indicating that the government's decision to prosecute Michael was based on its own independent investigation[12] and that Poblete's desire to bring suit was not the determining factor. The record indicates that after Poblete reported his suspicion to the government, and the government acted in uncontrolled discretion by investigating and initiating criminal proceedings. There is no evidence indicating that Poblete provided false information to the police or urged or encouraged the police to arrest Michael. Therefore, Michael also cannot sufficiently prove the first element of malicious prosecution. Accordingly, we find no reason to disturb the summary judgment award.

## III. CONCLUSION

For the reasons discussed, we affirm the trial court's grant of summary judgment.

---

[12] In his appellate brief, Michael also contends that the Department of Justice's determination of probable cause was not the result of an independent investigation because it relied solely on Poblete's statements for finding probable cause. However, Michael has failed to point to any specific evidence in the record indicating how the government's investigation was not independent. Notably, in his affidavit, Special Agent Schulterbrandt stated that he based his findings on multiple employee interviews as well as his own personal investigation of the financial records of Barrio. Furthermore, the Assistant Attorney General assigned to the matter provided an affidavit also stating that the finding of probable cause was "not . . . based solely on the allegations or request of the complainant, but rather on the findings of an independent investigation conducted by our office." (Supp. J.A. 3.)