IN THE SUPERIOR COURT



**FILED**

April 30, 2020

TAMARA CHARLES
CLERK OF THE COURT

SUPERIOR COURT OF THE VIRGIN ISLANDS

DIVISION OF ST. THOMAS AND ST. JOHN

DR. TYLUR ARVIDSON and DR. TYGUE ARVIDSON,　　)
　　　　　　　　　　　　　　　　　　　　　　　　) CASE NO. ST-16-CV-410
　　　　　　　　　　　　Plaintiffs,　　　　　　　) Cite as 2020 V.I. SUPER 48
　　　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　v.　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　　)
DR. WILLIAM BUCHAR and V.I. CHIROPRACTIC, LLC,)
　　　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　Defendants.　　　　　　　)
_____)

## MEMORANDUM OPINION

¶1.　　Before the Court is Defendant's fully briefed Motion for Partial Summary Judgment asserting that the Plaintiffs' breach of fiduciary duty claim must fail as a matter of law because the Plaintiffs failed to show that they incurred harm in the form of damages. Because Defendants have failed to prove that no genuine issue of material fact exists regarding the harm element of the Arvidsons' claim, the motion is denied.

### Factual and Procedural History

¶2.　　A more detailed rendering of the facts giving rise to this lawsuit was provided in the Court's June 6, 2018, Memorandum Opinion. Ultimately, this is a dispute between business partners who entered into discussions to dissolve their business venture, V.I. Chiropractic, LLC, upon their inability to decide how their chiropractic practice should be managed and operated. During these discussions and the ensuing, incomplete dissolution process, relations further deteriorated.

¶3.　　As a result, on July 12, 2016, Tylur and Tygue Arvidson initiated this suit against William Buchar.[1] After filing a First Amended Complaint and completing motions practice, the Arvidsons claim Buchar breached his fiduciary duties to them by failing to execute the dissolution of V.I. Chiropractic in an effort to lower the market value of the Arvidsons' shares during buy-out negotiations. They also ask this Court to dissolve the LLC.[2]

¶4.　　In response, Buchar filed counterclaims grounded in contract and tort. Buchar asserts the Arvidsons breached their contractual duties under the LLC's Operating Agreement and the covenant of good faith and fair dealing, intentionally interfered with prospective business relations, slandered him, and were unjustly enriched.[3]

---

[1] Pls.' Compl.
[2] Pls.' First Am. Verified Compl.
[3] Def.'s Second Am. Countercompl.

## Summary Judgment Standard

¶5.     Motions for summary judgment are governed by V.I. R. Civ. P. 56, which provides that the Court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[4] "A factual dispute is deemed genuine if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party[,]'"[5] and a fact is material only where it "might affect the outcome of the suit under the governing law[.]"[6] "[T]he party moving for summary judgment possesses the initial burden of identifying evidence indicating that there is an absence of any issue of material fact."[7] "If the moving party does so, the burden shifts to the non-moving party to present affirmative evidence from which a jury might reasonably return a verdict in [its] favor."[8] But, "[i]f a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial."[9] "A party asserting that a fact cannot be or is genuinely disputed must . . . support the assertion by (i) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (ii) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."[10]

¶6.     "The [C]ourt must credit all reasonable inferences from the evidence on record in favor of the nonmoving party in considering whether there are any disputed issues of material fact"[11] and "must take the non-moving party's conflicting allegations as true if supported by proper proofs."[12] Further, the Court "should not weigh the evidence, make credibility determinations, or draw 'legitimate inferences' from the facts when ruling upon summary judgment motions because these are the functions of the jury."[13] "The Court's role in deciding a motion for summary judgment is not to determine truth, but rather to determine

---

[4] V.I. R. Civ. P. 56(a).
[5] *Greene v. V.I. Water and Power Co.*, 65 V.I. 67, 73 (V.I. Super. Ct. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).
[6] *Williams v. United Corp.*, 50 V.I. 191, 194 (V.I. 2008) (quoting *Anderson*, 477 U.S. at 248).
[7] *United Corp.*, 64 V.I. at 309 (V.I. 2016) (quoting *Martin v. Martin*, 54 V.I. 379, 391 (V.I. 2010)) (citations omitted).
[8] *Hawkins v. Greiner*, 66 V.I. 112 (V.I. Super. Ct. 2017) (citation and quotation marks omitted).
[9] *United Corp.*, 64 V.I. at 309-10 (citing *Martin*, 54 V.I. at 391) (quotation marks omitted).
[10] V.I. R. Civ. P. 56 (c)(1).
[11] *Walters v. Walters*, 60 V.I. 768, 794 (V.I. 2014) (citing *Burd v. Antilles Yachting Servs., Inc.*, 57 V.I. 354, 358 (V.I. 2012) and *Mt. Holly Gardens Citizens in Action, Inc. v. Township of Mount Holly*, 658 F.3d 375, 381 (3d Cir. 2011)).
[12] *Simpson v. Golden Resorts, LLLP*, 56 V.I. 597, 605 (V.I. 2012) (citations and quotation marks omitted).
[13] *Williams*, 50 V.I. at 197 (citing *Anderson*, 477 U.S. at 255).

whether a factual dispute exists that warrants trial on the merits."[14]  The Court must deny summary judgment where a factual dispute exists[15] and must grant summary judgment if the non-moving party cannot establish an essential element of its claim.[16]

## Analysis

¶7.     Buchar argues that (1) because V.I. Chiropractic was not dissolved, as the Arvidsons initially alleged in their Original Complaint, and because it remains in good standing, the Arvidsons "suffered no damages" with regard to the breach of fiduciary duty claim;[17] (2) the Operating Agreement precludes Buchar from incurring liability in executing his managerial duties for the LLC; and (3) 13 V.I.C. § 1303 prevents Buchar from incurring liability.

**A.     The incomplete dissolution of V.I. Chiropractic does not prevent the Arvidsons from fulfilling the harm element.**

¶8.     The Virgin Islands Limited Liability Act controls the claims of Virgin Islands LLC members and managers against other members and managers of the same LLC.[18]  Specifically, 13 V.I.C. § 1409(h)(2)-(4) establish that managers in manager-managed LLCs owe fiduciary duties to other LLC members and the LLC.  Referring to 13 V.I.C. § 1409(b)-(d), 13 V.I.C. §1409 (h)(2) provides that "a manager [of a manager-managed LLC] is held to the same standards of conduct prescribed for members" in member-managed LLCs; namely, managers owe the duty of loyalty, the duty of care, and the obligation of good faith and fair dealing.[19]  Similarly, under Section 1409(h)(3), the same fiduciary duties apply to LLC members "who pursuant to [their] operating agreement exercise[] some or all of the rights of a manager in the management and conduct of the [LLC's] business."[20]  But, 13 V.I.C. § 1409(h)(4) indicates that "a manager is relieved of liability imposed by law for violation of the standards prescribed by subsections… of this section *to the extent of the managerial authority delegated to the members* by the operating agreement."[21]

---

[14] *Hawkins*, 66 V.I. at 117 (citing *Williams*, 50 V.I. at 195).

[15] *See id.* (citing *Sealey-Christian v. Sunny Isle Shopping Center*, 52 V.I. 410, 423 (V.I. 2009)).

[16] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (explaining that summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial").

[17] Def.'s Reply to Pls.' Opp. to Def.'s Mot. Summ. J. 2.

[18] *See* Title 13, Chapter 15 of the Virgin Islands Code, Subchapter IV, "Relations of Members to Each Other and to Limited Liability Company" (establishing the statutes that govern rights, obligations, and duties that govern relations between individuals who are members and managers of the same LLC)  *Compare* to Chapter 15 of the Virgin Islands Code, Subchapter III, "Relations of Members and Managers to Persons Dealing with Limited Liability Company" (establishing rights, obligations, and duties that govern relations between individuals who are members or managers of an LLC and those individuals or entities who are not part of the same LLC, e.g., creditors).

[19] 13 V.I.C. § 1409 (h)(2).

[20] 13 V.I.C. § 1409 (h)(3).

[21] 13 V.I.C. § 1409 (h)(4) (emphasis added).

¶9.      Here, the V.I. Chiropractic Operating Agreement establishes that Buchar is the LLC's Manager.[22] Further, the Operating Agreement requires the Arvidsons' to perform "consulting services" in a fashion akin to employees in an employer-employee relationship.[23]  Neither party argues the contrary.

¶10.     The standards governing LLC fiduciary duties are found in 13 V.I.C. § 1409(b), (c), and (d), which define the duties of loyalty,[24] care,[25] and good faith and fair dealing,[26] respectively.  When addressing the duty of loyalty, 13 V.I.C. § 1409(b)(1), in pertinent part, requires managers of manager-managed LLCs:

> to account to the company and to hold as trustee for it any property, profit, or benefit derived by the [manager] in the conduct or winding up of the company's business or derived from a use by the [manager] of the company's property, including the appropriation of a company's opportunity.[27]

Title 13 V.I.C. § 1409(c) makes clear that a manager's duty of care is owed to the LLC and "its other members in [the course of] the [manager's] conduct of and winding up of the company's business;"[28] but requires only that the manager "refrain[] from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law."[29]  Finally, 13 V.I.C. § 1409(d) indicates that a manager "shall discharge [his] duties to [his LLC] and its other members under this chapter or under the [LLC's] operating agreement and exercise any rights consistently with the obligation of good faith and fair dealing."[30]

¶11.     Outside of these provisions, the Virgin Islands Code provides no further guidance.  Similarly, no Virgin Island Supreme Court precedent addresses a breach of fiduciary duty claim in an LLC context. Fortuitously, another judge on this court conducted a *Banks*[31] analysis of the breach of fiduciary duty cause of action in *Ebner v. Petrohan*.[32]  Finding its research, reasoning, and conclusion sound, the Court adopts them here.  Under *Ebner*, the Restatement (Second) of Torts § 874 "represents the soundest rule for establishing a breach of fiduciary duty claim in the Virgin Islands."[33]  Section 874 states that, "[o]ne

---

[22] V.I. Chiropractic Operating Agreement, Clause 3.7 ("Manager means Dr. William L. Buchar . . . or the party or parties then acting in that capacity."); Clause 6.1 ("The name of the Manager is William L. Buchar.").
[23] V.I. Chiropractic Operating Agreement, Exhibit B.  *See also Arvidson v. Buchar*, Case No. ST-16-CV-410, 2019 V.I. LEXIS 122, ¶¶ 34-39, ¶¶53-56 (V.I. Super. Ct. September 11, 2019).
[24] 13 V.I.C. § 1409 (b).
[25] 13 V.I.C. § 1409 (c).
[26] 13 V.I.C. § 1409 (d).
[27] 13 V.I.C. § 1409 (b)(1).
[28] 13 V.I.C. § 1409 (c).
[29] 13 V.I.C. § 1409 (c).
[30] 13 V.I.C. § 1409 (d).
[31] *Banks v. Intenational Rental and Leasing Corp.*, 55 V.I. 967 (V.I. 2011).
[32] Case No. ST-14-CV-537, 2018 V.I. LEXIS 80 (V.I. Super. Ct. Aug. 14, 2018).
[33] *Id.* at *16 (quoting *Guardian*).

standing in a fiduciary relation with another is subject to liability to the other for harm resulting from a breach of fiduciary duty imposed by the relation."[34]

¶12.     *Ebner* also determined that a plaintiff asserting a claim of breach of fiduciary duty must provide the following four elements: "(1) that a fiduciary relationship exists; (2) that the fiduciary breached the duty imposed by said relationship; (3) that the plaintiff must have been harmed; and (4) that the fiduciary's breach was the proximate cause of said harm."[35]

¶13.     "A fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation."[36] "Some fiduciary relations, such as those of trustee and beneficiary, principal and agent[,] and director and corporation are the subject of a considerable group of substantive rules of law."[37] However, a survey of case law originating from this jurisdiction fails to reveal precedent addressing a breach of fiduciary duty in the LLC context, or even an analogous case addressing the cause of action in a partnership context.

¶14.     In their Original Complaint, the Arvidsons alleged that, by filing for dissolution of V.I. Chiropractic, Buchar breached his fiduciary duties owed to them as members of V.I. Chiropractic.[38] In his initial Motion for Summary Judgment, Buchar argued that this Court should grant summary judgment in his favor because the LLC dissolution of which the Arvidsons complained never occurred and, as a result, it was undisputed that they could not fulfill the harm element required for a successful breach of fiduciary duty claim.[39] In response, the Arvidsons filed a First Amended Complaint in which they still maintain their breach of fiduciary duty cause of action against Buchar.[40] However, they now allege:

> 26. Buchar as manager of the Company owed certain fiduciary obligations to the Arvidsons who are members of the Company.
> 27. *Buchar's indication was that he was going to dissolve the Company, and the actions he took in initiating dissolution of the Company, were for the sole purpose of reducing the price the Arvidsons could demand for their interest in the Company.* Buchar acted in his own self-interest to Plaintiffs' detriment which violated Buchar's fiduciary obligations to the Arvidsons as members of the Company.
> 28. *Buchar, having provided formal notice of dissolution, did not disclose he had not dissolved the Company until sometime after the filing of the original Complaint.*
> 29. Buchar's action violated the duty of good faith and fair dealing because, among other things, Plaintiffs relied on Buchar's Notice of Dissolution in the filing of their complaint and then were compelled to

---

[34] Restatement (Second) of Torts § 874 (1979).
[35] *Guardian Insurance Co. v. Khalil*, 64 V.I. 3, 18 (V.I. Super. Ct. 2012).
[36] *Id.*
[37] Restatement (Second) of Torts § 874 Reporter's Notes.
[38] Original Compl.
[39] Def.'s Mot. Summ. J. 1-5.
[40] First Am. Compl.

conduct discovery to determine the true status of the Company as the only official paperwork stated it would be dissolved in thirty (30) days.

30. Buchar's actions benefitted himself to the detriment of the Arvidsons, minority owners of the Company, without any justifiable business purpose.

31. Although the Arvidsons could have sold their membership interests in the Company to a third party on the open market as an alternative to selling to Buchar, *Buchar by noticing the dissolution of the Company initially appropriated that opportunity for himself to the detriment of the Arvidsons*, and when they discovered the company was not actually dissolved, they were no longer in a reasonable position to sell their interests.

32. Buchar appropriated the Arvidsons' opportunity for selling the Company to him by indicating that he was unilaterally electing to dissolve the Company.

33. Buchar's conduct constitutes intentional misconduct because he knowingly violated his fiduciary obligations to the Arvidsons despite having the advice of counsel at all times.

34. Buchar's breach of fiduciary obligations also includes his failure to cause the Company to issue K-1s as the Company is required to do.

35. *Buchar's violation of his fiduciary obligations to the Arvidsons caused the Arvidsons damage in an amount to be shown at trial.*[41]

¶15.    As noted, the Arvidsons allege that Buchar's "actions violate[d] the duty of good faith and fair dealing,"[42] and other language from the First Amended Complaint indicates that the Arvidsons intend to bring breach of the duty of loyalty[43] and breach of the duty of care[44] claims as well.

¶16.    Because Buchar limits his motion's attack to the harm element set out in the Restatement (Second) of Torts § 874, the Court will limit its analysis to that element as well.  In support of the harm element in their First Amended Complaint, the Arvidsons now allege that Buchar: (1) "reduc[ed] the price the Arvidsons could demand for their interest in the Company;"[45] (2) "benefitted himself to the detriment of the Arvidsons, minority owners of the Company;"[46] (3) prevented "the Arvidsons…[from selling] their membership interests in the Company to a third party on the open market as an alternative to selling to Buchar…[thereby] appropriate[ing] that opportunity for himself…[and placing them in an un]reasonable position to sell their interests;"[47] (4) "appropriated the Arvidsons' opportunity for selling the Company to

---

[41] First Am. Compl. ¶¶ 26-35.

[42] *Id.* ¶ 29.

[43] *Id.* ¶ 31 ("…Buchar by noticing the dissolution of the Company initially appropriated that opportunity for himself to the detriment of the Arvidsons, and when they discovered the company was not actually dissolved, they were no longer in a reasonable position to sell their interests…").

[44] *Id.* ¶ 33 ("Buchar's conduct constitutes intentional misconduct because he knowingly violated his fiduciary obligations to the Arvidsons…").

[45] *Id.* 27.

[46] *Id.* 30.

[47] *Id.* 31.

him by…unilaterally" indicating that he would dissolve the LLC;[48] and (5) "fail[ed] to cause the Company to issue K-1s."[49]

¶17.     By amending their Complaint, the Arvidsons made new allegations which demonstrate that Buchar has failed to establish that no genuine issue of material fact exists regarding the harm element. Buchar did not file a restyled Motion for Summary Judgment that responds to the five different types of harm alleged the First Amended Complaint's allegations nor to the changed nature of the Arvidsons' claim.  Instead, Buchar filed a Reply in response to the Arvidsons' Opposition Motion that addressed the Arvidsons' First Amended Complaint.  In it, Buchar still maintains that he is entitled to summary judgment because V.I. Chiropractic was never dissolved[50] and continues by contending that the Arvidsons' First Amended Complaint fails to allege the Arvidsons suffered damages and fails to define what those damages are or could be.  Ultimately, Buchar unpersuasively concludes "as a result, this lack of damages defeats their claim."[51]  This particular argument is unavailing.

¶18.     Further, one of the more hotly contested issues of fact in this dispute is whether the Arvidsons made additional capital contributions to V.I. Chiropractic in the latter part of 2015.  In this Court's March 10, 2020, Memorandum Opinion, the Court addressed the issue of whether to disallow evidence which could possibly show, at trial, whether the Plaintiffs made additional capital contributions after V.I. Chiropractic's initial founding.[52]  Because this evidence has *not* been deemed *in*admissible, a genuine dispute exists regarding whether the Arvidsons made additional capital contributions and, more importantly, gained larger ownership percentages of V.I. Chiropractic—an issue of fact directly impacting the determination of monetary damages at trial.

¶19.     Buchar also argues in his Reply that, because V.I. Chiropractic was never dissolved, "[P]laintiffs' financial interest remains viable."[53]  However, the only evidence Buchar submits in support of this contention is an email chain showing (1) the Arvidsons' counsel requested a copy of V.I. Chiropractic's certificate of dissolution from Buchar's counsel in 2016, nearly a year prior to filing this lawsuit and (2) Buchar's counsel's two-sentence response stating that "You should get a response next week.  We have not filed for dissolution."[54]  As a result, this argument is also unavailing.

¶20.     First, the email chain fails to definitively show that Buchar *would not* or *did not intend* to file for dissolution.  Instead, by prefacing the statement that no dissolution had been completed with a statement informing the Arvidsons' counsel that he "should get a response next week," Buchar's counsel left open

---

[48] *Id.* 32.
[49] *Id.* 34.
[50] Def.'s Reply to Pls.' Opp. to Def.s' Mot. Summ. J. 1-2.
[51] *Id.* 2.
[52] *Arvidson v. Buchar*, Case No. ST-16-CV-410, 2020 VI SUPER 36, ¶¶ 19-57 (V.I. Super. Ct. March 10, 2020).
[53] Def.'s Reply to Pls.' Opp. to Def.s' Mot. Summ. J. 2.
[54] Def.'s Reply to Pls.' Opposition to Def.'s Mot. Summ. J., Exh. A.

the possibility that the Arvidsons and their counsel would see a certificate of dissolution the following week. Further, because Buchar was the only individual empowered by the Operating Agreement to initiate and complete a dissolution, the Arvidsons had even more reason to expect a response from Buchar's counsel regarding dissolution because they could not execute the dissolution themselves.

¶21.     Second, the email chain does nothing to bolster Buchar's claim that the Arvidsons lack damages or an ability to prove damages, or that, with an incomplete dissolution, the Arvidsons' "financial interest remains viable."

¶22.     Third, and more important to the determination of this motion, the email chain fails to show the absence of a genuine issue of material fact regarding the existence of the types of harm the Arvidsons complain of in their First Amended Complaint. In his Reply, Buchar posits that, because V.I. Chiropractic was never dissolved, "plaintiffs' financial interest remain[ed] viable."[55] However, the email fails to simultaneously submit new evidence proving a lack of harm. In order to respond to the Arvidsons allegations in their First Amended Complaint addressing harm, the email and Buchar's Reply needed to show the Arvidsons did *not* incur an injury, loss, or detriment. It also needed to show if or how the "plaintiffs' financial interest remain[ed] viable" due to Buchar's failure to dissolve V.I. Chiropractic. Instead, the email fails to respond to the Arvidsons' new allegations addressing harm and merely reiterates the argument he made in his Motion for Summary Judgment. Further, the parties still dispute the percentages of V.I. Chiropractic owned by the respective parties.

¶23.     As the movant, Buchar bore the burden of proving the absence of a genuine issue of material fact regarding the Arvidsons' lack of harm due to V.I. Chiropractic's incomplete dissolution. When it became evident that Plaintiffs would not have suffered harm *in the way* they originally alleged, the Arvidsons responded to Buchar's Motion for Summary Judgment by amending their Complaint to contend that harm flowed from an incomplete LLC dissolution. Having done so, the burden shifted back to Buchar,[56] who instead of demonstrating the Arvidsons' lack of harm, regurgitates the same argument he made in his initial motion and relies on an email that fails to show how Buchar's failure to dissolve V.I. Chiropractic led to an absence of harm to the Arvidsons under the theory advanced in their Original Complaint, much less that of their First Amended Complaint. Since Buchar failed to show how the LLC's continued

---

[55] *Id.* 2.

[56] The allegations of harm to which Buchar needed to respond in his Reply were: (1) "reducing the price the Arvidsons could demand for their interest in the Company;" (2) "benefit[ing] himself to the detriment of the Arvidsons, minority owners of the Company;" (3) preventing "the Arvidsons…[from selling] their membership interests in the Company to a third party on the open market as an alternative to selling to Buchar…[therein] appropriate[ing] that opportunity for himself…[and placing them in an un]reasonable position to sell their interests;" (4) "appropriate[ing] the Arvidsons' opportunity for selling the Company to him by…unilaterally" indicating that he would dissolve the LLC; and (5) "fail[ing] to cause the Company to issue K-1s." First Am. Compl. ¶¶ 27, 30, 31, 32, and 34.

existence resulted in the Arvidsons' "financial interests remain[ing] viable," Buchar failed to meet his summary judgment burden.

**The V.I. Chiropractic Operating Agreement does not preclude all liability for Buchar in his capacity as Manager of V.I. Chiropractic.**

¶24.     Second, Buchar's argument asserts that provisions in the Operating Agreement prevent his being held liable for acts he committed as Manager.  In his Motion, Buchar points specifically to Articles 6.1, 10, 14.1, 14.6, 15.1, and 15.2, to show the managerial authority the Agreement grants to Buchar as Manager of V.I. Chiropractic, Articles 17, 18.1, 18.2, and 18.3 to show Buchar possessed exclusive authority to initiate and finalize V.I. Chiropractic's dissolution, and Articles 15.3 and 15.4 to show the Agreement provides that Buchar is to be indemnified in instances where he incurred liability for acts completed in his capacity as Manager of V.I. Chiropractic.[57]  In response, the Arvidsons argue that provisions in the Agreement do not protect Buchar from liability when he commits acts "in bad faith."[58]  Buchar replies that "[P]laintiffs argue, without any factual or legal support, that [D]efendant's conduct was performed 'in bad faith'"[59] and that Buchar "acted beyond the scope of his fiduciary duties [when] handling business operations . . . [without] point[ing] to a single instance or example to support their desire."[60]

¶25.     When interpreting a contract, the Court's "task is not to reveal the subjective intentions of the parties, but what their words would mean in the mouth of a normal speaker of English, using them in the circumstances in which they were used."[61]  In these instances, the "goal is to ascertain the intent of the parties and give it effect [because] [t]he cardinal principle of contract interpretation is that the intention of the parties must prevail unless it is inconsistent with some established rule of law."[62]  The Court "will not rewrite the contract or give it a construction that conflicts with the plain, ordinary[,] and accepted meaning of the words used."[63]

¶26.     The Agreement's provisions confer upon Buchar the authority to manage and operate V.I. Chiropractic and to execute its dissolution.  While Articles Seventeen and Eighteen, the clauses specifically addressing dissolution, bestow upon Buchar, and Buchar alone, the authority to initiate and complete the dissolution process, the Arvidsons' claim is for a breach of fiduciary duty.  Although this particular breach of fiduciary duty claim arises from facts centering on an initiated but incomplete LLC

---

[57] Def.'s Mot. Summ. J. 39-43.
[58] Pls.' Opp. to Def.'s Mot. Summ. J. 8-9.
[59] Def.'s Reply to Pls.' Opp. to Def.'s Mot. Summ. J. 3.
[60] *Id.*
[61] *Phillip v. Marsh-Monsanto*, 66 V.I. 612, 625 (V.I. 2017).
[62] *Id.*
[63] *Volunteer Fireman's Insurance Services, Inc. v. CIGNA*, 693 A.2d 1330, 1339 (Pa. Super. Ct. 1997).

dissolution, Buchar's alleged liability must arise from acts that contravene the fiduciary duty Buchar owes to the Arvidsons and the liability that flows from those alleged contraventions. Therefore, out of the laundry list of provisions to which Buchar points in his Motion for Summary Judgment, the Court will read the Agreement's indemnity provisions in tandem with the Agreement's dissolution provisions.

¶27. Clause 15.3 provides:

> 15.3 No Liability. **Neither the Manager**, **nor** any **employee**, or any agent of the Manger [sic], (including any shareholder, officer, director or manager of a successor manger [sic] that is not an individual), **will be liable**, responsible, or accountable in damages or otherwise **to the Company** or any Member **for any action taken or failure to** act on behalf of the Company within the scope of the authority conferred on the Manager by this Agreement or by law **unless** the **action or omission** was performed or omitted fraudulently, **in bad faith**, or constituted gross negligence.[64]

And, Clause 15.4 indicates, in part:

> 15.4. Indemnification and Hold Harmless. **The Company will indemnify and hold harmless the Manager** (and its shareholders, officers, directors, employees, and agents, if any) **and Dr. William Buchar, from and against any loss, expense**, damage, or injury suffered or sustained by them by reason of any acts, omissions, or alleged acts or omissions **arising out of the Manager's or Dr. William L. Buchar's activities on behalf of the Company**. This includes, but is not limited to, any judgment award, settlement, reasonable attorneys' fees, and other costs or expenses incurred in connection with the defense of any actual or threatened action, proceeding, or claim, if the acts, omissions or alleged acts or omissions on which the actual or threatened action, proceeding[,] or claim is based were for a purpose reasonably believed to be in the best interests of the Company and were not performed or omitted fraudulently, **in bad faith**, or as a result of gross negligence by the party **and were not in violation of the Manager's fiduciary obligation to the Company**. Any indemnification will only be for the assets of the Company.[65]

The language in these clauses is clear. Indemnification will not be afforded under the Agreement when indemnification arises from acts or omissions executed "in bad faith."

¶28. Article 17 states:

> The **Manager, may initiate** a **dissolution** of the Company in writing **in which case the affairs of the Company shall by wound up as soon as is reasonably possible**, and all remaining assets divided as provided for by this Agreement and other applicable provisions of the law. If the Manager intends to initiate the dissolution of the Company, the Manager

---

[64] V.I. Chiropractic Operating Agreement, Clause 15.3 (emphasis added).
[65] V.I. Chiropractic Operating Agreement, Clause 15.4 (emphasis added).

shall first so notify the Members and the Members shall have the right, by written notice to the Manager within 10 days to invoke their right of first negotiation hereunder to purchase the business. If the Members invoke such right, the Manager and Members shall enter into good faith exclusive negotiations for a period of up to 30 days thereafter for the sale of the Manager's Interest to Members on mutually acceptable terms and conditions. The Manager shall not dissolve the Company during such negotiation period. If an agreement is not reached, the Manager may continue with the dissolution of the Company. Except as set forth in an unalterable part of the Act, **no Member may initiate dissolution of the Company except if the Manager is deceased or legally incapacitated**.[66]

Title 13 of the Virgin Islands Code §1801 sets out that a "limited liability company is dissolved, and its business must be wound up, upon the occurrence of any of the following events: (1) an event specified in the operating agreement…"[67]

¶29.    Buchar argues that no genuine issue of material fact exists with regard to whether Buchar incurred liability due to his actions stemming from his incomplete dissolution of V.I. Chiropractic by pointing to provisions in the Agreement that purportedly grant Buchar exclusive authority over V.I. Chiropractic's management, operation, and dissolution. However, the dissolution provision to which Buchar points states that when Buchar initiates the dissolution process, "the affairs of the Company shall be wound up *as soon as is reasonably possible*." In their Opposition, the Arvidsons contend that Buchar's ability to be indemnified by the LLC only exists as long as he has not committed the complained of acts or omissions "in bad faith." Further, the Arvidsons make new allegations in their First Amended Complaint showing that a genuine issue of material fact exists as to whether Buchar did handle the V.I. Chiropractic dissolution process "in bad faith." However, when responding to the Arvidsons' counterarguments, Buchar fails to present new law, new evidence, or even new allegations. He only repeats the Arvidsons' arguments without explaining how no genuine issue of material fact exists regarding whether Buchar's initiating an incomplete LLC dissolution fails to amount to an act or omission performed in bad faith in the context of the Agreement's language in Article 17 and the Virgin Islands LLC Act's language in 13 V.I.C. § 1801. By failing to point to evidence supporting his arguments, Buchar fails to meet his summary judgment burden with regard to this line of argument.

**Title 13 V.I.C. § 1303 does not prevent Buchar from incurring liability for breaching a fiduciary duty he owes to members within his own LLC.**

---

[66] V.I. Chiropractic Operating Agreement, Article 17 (emphasis added).
[67] 13 V.I.C. § 1801 (1).

¶30.      In his Motion, Buchar states that, as Manager of V.I. Chiropractic, he is endowed with specific authorities and powers to conduct its business and posits that acts he commits in his managerial capacity do not open him up to liability under the Virgin Islands Code.  To give this assertion and his Motion a patina of legitimacy, Buchar quotes 3 V.I.C. § 1303 in its entirety[68] and, in his Reply, invokes *Sullivan v. Sabharwal*,[69] which applies the same concept as 13 V.I.C. § 1303.[70]  His reliance is misplaced.

¶31.      Section 1303 falls under Chapter Fifteen, Subchapter III of the Virgin Islands LLC Act—a subchapter which is entitled "Relations of Members and Managers to Persons Dealing with [the] Limited Liability Company."  Subchapter III contains the statutes that govern instances in which members and managers interact and incur liability to actors who are *neither* members *nor* managers of the *same* LLC.[71]  Since, it controls relations that LLC members and managers have with those *outside* of the LLC, Subchapter III's precepts do not apply here.

¶32.      In contrast, Subchapter IV of Chapter Fifteen is entitled "Relations of Members to Each Other and to [the] Limited Liability Company."  Subchapter IV embodies the statutes that apply in situations and disputes centering on the *relations between and among* members and managers of the *same* LLC, whether liability-incurring or not.[72]  Specifically, 13 V.I.C. § 1409 sets out the standards with which an LLC member and an LLC manager must abide when performing their duties with regard to the LLC, and takes care to establish that the duty of loyalty, duty of care, and obligation of good faith and fair dealing apply in LLC contexts.  When read with 13 V.I.C. § 1410, 13 V.I.C. § 1409 delineates the causes of action that may be brought by members and managers of LLCs against each other when one breaches one of the statute's named fiduciary duties.

---

[68] Mot. Summ. J. 44-45.

[69] Case No. 2016-21, 2018 WL 5315198 (D. V.I. Oct. 26, 2018) (finding that an LLC managing member could not be held liable to the plaintiff in a personal injury-negligence action due to principles sounding in personal injury rather than LLC governance).

[70] Def.'s Reply to Pls.' Opp. to Def.'s Mot. Summ. J. 4.

[71] *See* 13 V.I.C. § 1301 (establishing the principles of agency that are to apply when members or managers, while "carrying on in the ordinary course the company's business," bind the LLC, sign an instrument in the LLC's name, or sign and deliver an instrument transferring or affecting the LLC's interest in real property); 13 V.I.C. § 1302 (establishing that the LLC is liable for a "loss or injury caused to a person, or for a penalty incurred, as a result of a wrongful act or omission, or other actionable conduct, of a member or manager acting in the ordinary course of business); and 13 V.I.C. § 1303 (establishing that when the LLC incurs debts, obligations, or liabilities, neither the member nor the manager is personally responsible for those debts, obligations, or liabilities unless a member has so specified he will take on the LLC's debt, obligation, or liability in a provision in the articles of organization and has consented in writing).  These sections of the Virgin Islands LLC Act affect relations LLC members and managers have with those *outside* of the LLC of which they are part.

[72] *See* 13 V.I.C. §§ 1401-1411 (establishing the law that applies for LLC member contributions, members' reimbursement and remuneration from the LLC, LLC management, distributions, members' right to information, standards of conduct governing members and managers, causes of action members may bring, and the continuation of the LLC after a specified term).  These sections of the Virgin Islands LLC Act affect relations LLC members and managers have with other members and managers of the same LLC and the LLC itself.

¶33.    Finally, *Sullivan v. Sabharwal*[73] addressed a factual scenario in which the managing member of an LLC was sued by an individual—who was *not* another member or manager of the same LLC—for personal injuries resulting from a fall the plaintiff had on the LLC's villa rental property.[74] Its precepts do not apply to the present dispute because the Arvidsons and Buchar are members of the same LLC and their dispute does not sound in negligence and personal injury jurisprudence. Accordingly, Subchapter IV of the Virgin Islands LLC Act controls. Failing to show how 13 V.I.C. § 1303 and *Sullivan* demonstrate the lack of a genuine issue of material fact with regard to the Arvidsons' breach of fiduciary duty claim, Buchar fails to meet his summary judgment burden with regard to this argument as well.

## Conclusion

¶34.    Accordingly, because Buchar failed to show that no genuine issue of material fact exists concerning the harm element of the Arvidsons' breach of fiduciary duty claim; because the Operating Agreement does not preclude all liability that Buchar may incur when acting in his capacity as Manager of V.I. Chiropractic; and because the Virgin Islands Code does not prevent Buchar from incurring liability in his capacity as Manager of V.I. Chiropractic, Buchar's motion for partial summary judgment with regard to the Arvidsons' breach of fiduciary duty claim is denied. An Order consistent with this opinion shall issue.

Dated: March 28, 2020.

HON. MICHAEL C. DUNSTON
JUDGE OF THE SUPERIOR COURT
OF THE VIRGIN ISLANDS

ATTEST: Tamara Charles
Clerk of the Court _____/_____/_____

by: _____
Lori Boynes-Tyson
Court Clerk Supervisor _____/_____/_____

---

[73] Case No. 2016-21, 2018 WL 5315198 (D. V.I. Oct. 26, 2018).
[74] *Sullivan*, 2018 WL at *1.

## SUPERIOR COURT OF THE VIRGIN ISLANDS

## DIVISION OF ST. THOMAS AND ST. JOHN

DR. TYLUR ARVIDSON and  DR. TYGUE ARVIDSON, )
)
) CASE NO. ST-16-CV-410
        Plaintiffs, )
)
)
)
        v. )
)
DR. WILLIAM BUCHAR and V.I. CHIROPRACTIC, LLC, )
)
        Defendants. )
)

## ORDER

The Court having issued a Memorandum Opinion on this date; consistent therewith it is

ORDERED that the Defendants' Motion for Summary Judgment is DENIED; and it is

ORDERED that copies of this Order and of the accompanying Memorandum Opinion shall

be directed to counsel of record.

DATED: March 28, 2020.

MICHAEL C. DUNSTON
JUDGE OF THE SUPERIOR COURT
OF THE VIRGIN ISLANDS

ATTEST: Tamara Charles
Clerk of the Court _____/_____/_____

by:_____
Donna D. Donovan
Court Clerk Supervisor 5/4/2020